## ELLA WILKINS *vs.* HOMER METCALF.

May Term, 1898.

Present: Ross, C. J., Rowell, Tyler, Munson, Start and Thompson, JJ

Opinion filed October 15, 1898.

*Evidence—Self-serving Acts and Expressions.*—Upon trial of a complaint for bastardy, the defendant is not entitled to show that ten months before the time of the alleged act he had protested to his father against his employing the complainant as a servant in the house on the ground that she was of bad character. Such act and declaration do not fall within the rule which admits the conduct and expressions of the party

in his own favor when the subject of inquiry is the existence of a mental condition or purpose, for they had no tendency to show that he would not ten months later, or even at the time, have committed the act complained of.

*Cross-examination—Question too Broad.*—A witness testified that about the time when the child must have been begotten he was a member of the same household with the complainant and defendant and observed their conduct, but neither saw nor heard anything improper between them. On cross-examination it was proposed to ask him "if he did not think at that time, from what he saw take place between the parties, that their relations were not exactly as they ought to be, and that there was something not right between the complainant and the boys," referring to the defendant's younger brothers. *Held*, too broad and properly excluded in the discretion of the court.

*Self-serving Declarations.*—The defendant's mother, being an important witness in his favor, was properly inquired of in behalf of the complainant as to having received a letter referring to her son's relations with the complainant, and what action she took thereupon; but the court properly excluded the statements contained in the letter, and other statements brought to the mother by a neighbor, which were nothing more than the complainant's declarations in her own favor that the defendant was the father of her child.

*Fixing Date.*—The defendant, having testified to seeing the complainant in the act of sexual intercouse with one George Metcalf at the important time, was properly allowed to add, as aiding him in fixing the date, but not as corroborating his testimony, that he told certain named persons of it soon after its occurrence.

*Self-serving Declarations.*—It was error to allow the defendant's father to testify to what the defendant told him regarding a confession by the complainant.

*Deposition—Exception—Waiver.*—It is the proper practice to ascertain whether the witness has knowledge of a party's reputation before asking what it is; but if that question is waived, the knowledge will be presumed from the general answer.

*Deposition—Exception—Waiver.*—Such preliminary question must be taken to have been waived when the only exception is to the form and substance of the deposition in which the answer occurs.

*Deposition—Citation.*—As the complainant was the party of record, notice of the taking of the deposition was properly served upon her, although the prosecution was under the control of the town.

COMPLAINT for bastardy. Trial by jury at the September term, 1897, Chittenden county, *Taft*, J., presiding. Verdict and judgment for the defendant. The complainant excepted. The prosecution was controlled by the town of Underhill under V. S. 2725.

*Henry Ballard* and *J. J. Monahan* for the complainant.

*L. F. Wilbur* and *V. A. Bullard* for the defendant.

TYLER, J. Complaint for bastardy. It appeared on the trial in the court below that the child was begotten in July or August, 1896, and was born May 3, 1897. The complainant had been a servant in the family of the defendant's father, at one time from March, 1893, to March, 1894, and again from October, 1895, to October, 1896, and occupied a room near that of the defendant.

(1) The defendant claimed, and his evidence tended to show, that during the complainant's last year's service for defendant's father, he and the complainant were not on friendly terms with each other, that they had but little to do with each other, and that they quarrelled considerably. The complainant's evidence tended to show the contrary—that their only quarrels were "lovers' quarrels," the result of mutual jealousy and of charging each other with associating with other persons.

The defendant was allowed to show, and did show against the objection of the complainant, that the defendant objected to and protested against his father's hiring the complainant the last year she worked for him, upon the ground, "that she was not a proper and fit person to have as a member of his family in the position of a hired servant, by reason of her bad character and reputation." It did not appear and it was not claimed by the defendant that the complainant had any knowledge of such objection and protest upon his part. To the admission of the evidence the complainant excepted. We think its admission was error. It was held in *Schlemmer* v. *State*, 51 N. J. L. 29: "That whenever the existence of a purpose, or state of mind, is the subject of inquiry, explanatory conduct and accompanying expressions of the party himself, or of other persons to him or in his presence, may be shown by proof." See *Danforth* v. *Streeter*, 28 Vt. 490; *Worden* v. *Powers*, 37 Vt. 619. So a party

may prove by others his own expressions of physical sensations or mental emotions, as of pain upon receiving a bodily injury, or of grief upon hearing of the circulation of defamatory stories concerning himself. In this case the defendant did not claim to have been hostile to or to have had an aversion to the complainant; his declarations were merely of his opinion or judgment as to her suitableness, on account of her bad character and reputation, to enter his father's family as a servant, and were made some ten months before the alleged act was committed. It is true that this evidence was not offered as tending to establish the *fact* of the complainant's bad character and reputation, and the jury could not legitimately have drawn such inference from it. It was offered to show the defendant's *opinion* of her, irrespective of what the fact was in this regard, and to render it less probable that, entertaining such opinion, he should have been on friendly and intimate terms with her and committed the act charged.

The defendant claims that the state of his mind regarding the complainant was a relevant fact bearing upon the main issue in the case, and that the evidence was admitted under the rule, that such fact may be proved by the party's contemporaneous declarations. But the fact that the defendant, in October, 1895, considered the complainant unsuitable to become a servant in the family for the reason assigned had no tendency to show that he did not commit the act alleged in July or August, 1896. His declarations were not contemporaneous with any relevant fact. His opinion respecting the complainant had no tendency to show his state of mind toward her in the direction alleged. If he held the opinion which he expressed he would not have been less likely to have committed the act than he would have been if he had believed her a virtuous woman. The declarations were too remote from any fact in issue, and they were calculated to prejudice the complainant's case.

The evidence admitted came within no exception to the rule, that proof of declarations made by a witness out of court are not admissible in corroboration of testimony given by him in court.

(2) The witness Whittiker testified that in July or August, 1896, he worked for the defendant's father about two weeks, and at night occupied a room between those occupied by the defendant and the complainant; that he observed the conduct of the parties, and that he neither saw nor knew of anything improper between them; that they said but little to each other and appeared unfriendly towards each other. On cross-examination the witness was asked if he "did not think at that time from what he saw take place between the complainant and the defendant that their relations were not exactly as they ought to be, and that there was something not right between the boys and Ella." The court upon objection excluded this question, to which the complainant excepted.

The relation of the parties during the time they were in each other's society was a relevant fact, and the witness having testified in chief upon the subject of that relation, it was the right of counsel to cross-examine him in respect to what he had observed. The question was objectionable in that it included the complainant's relation with "the boys," meaning, as we suppose, the defendant's younger brothers who slept in the room with him, which relation was irrelevant. In general, what a witness *thought* about a subject is immaterial and improper to state. It is sufficient for him to testify what acts he observed, and it is for the jury to *think* and pass judgment upon them. But here the witness had testified in chief that he had seen no improper acts or conduct between the parties, and if the question had directed his attention to some specific acts and called for his judgment upon them it would not have been error in the court to have admitted it; but this question was so broad as to what he saw during the two

weeks that it was in the discretionary power of the court, in the conduct of the trial, to admit or exclude it. 1 Greenl. Ev. §§ 447, 448 and notes.

(3) The defendant's mother, Mary Metcalf, was an important witness in his behalf. For the purpose of showing her interest and that she had been active in an attempt to shield her son and to induce the complainant to swear the paternity of the child upon some other person, the complainant's counsel made the following offer: "I offer to show that this witness received a letter from Mrs. Blake while Ella was living with her, referring to the matter of the relations of her son with Ella, stating the fact that Ella said that this defendant, her son, was the father of the child, and suggesting that she see Mrs. Whittiker; and immediately following that, on the same day, Mrs. Whittiker went to Mrs. Blake's to see Ella to find out all she could about it and come back and report to her."

The court permitted it to be shown that the witness received a letter referring to her son's relations with the complainant. The ruling was correct that it was competent to show what action the witness took upon receipt of the letter, but that it was not competent to show any statement contained in the letter purporting to have been made by the complainant respecting her child's paternity. The evidence would have been mere hearsay. It was a declaration made by the complainant to a third person in her own favor, and fell under no exception to the rule which excludes such evidence. For the same reasons it was incompetent to show what report Mrs. Whittiker brought back to the witness in respect to the sayings of the complainant upon the same subject.

(4) The defendant claimed that one George Metcalf might have been the father of the child, and testified that on the evening of August 2, 1896, he saw the complainant and George Metcalf in the act of sexual intercourse; and he was permitted to testify that he told Quinlan and Whittiker

of it soon after its occurrence. Evidence of this kind is sometimes admissible for the purpose of identifying an occasion or fixing a date. *Ross* v. *Bank of Burlington*, 1 Aik. 43; *Hill* v. *North*, 34 Vt. 604. The defendant's counsel claim in their brief that this evidence was admissible to fix the time of the alleged act, and it is not claimed that it was admissible for any other purpose. The time of the alleged act was evidently material, it being about nine months prior to the birth of the child. The fact that the defendant mentioned it to others might have aided him in fixing the date in his mind. As error must be affirmatively shown, it must be assumed that the trial court held it admissible for that purpose and not in corroboration of the defendant's testimony as to the act itself. In this there was no error.

(5) Evidence that the complainant opened the cellar door on an occasion and assisted some young men to obtain cider, was properly admitted if it had any tendency to show that the complainant had intimate relations with other young men than the defendant; but the testimony of the defendant's father that the defendant told him that he, the defendant, had a conversation with the complainant in which she at first denied and then confessed that she admitted the boys to the cellar, was improperly allowed. It was also error to admit the testimony of Whittiker as to the sayings of the defendant to him about the cellar being opened and the cider taken.

(6) It was not error to admit the deposition of Helen M. Clark. As the complainant was the party of record in the suit, notice of the taking was properly served upon her. The deposition was admitted subject to any legal objection as to form or substance, but no specific objection was pointed out and none appears in the exceptions. The only point made in the brief of complainant's counsel is that the deponent was not shown to be competent to testify upon the subject of defendant's reputation for chastity. It is the

usual and proper practice, as counsel claim, to ascertain whether the witness has knowledge upon the subject of the party's reputation, but that preliminary question may be waived, and then the competency of the witness would be assumed from the answer given. It must be considered as having been waived in this case, for the general exception to the form and substance of the deposition did not include the question of the deponent's competency.

       *Judgment reversed and cause remanded.*