MATTIE STEWART v. D. B. ANDERSON, Appellant.

**Breach of Promise:** EVIDENCE. In an action for the breach of a marriage promise, proof of three engagements and the bearing of two children to defendant is sufficient evidence of plaintiff's affections to warrant an instruction that if plaintiff's affections were implicated, and she had become attached to defendant, the wound and injury to affections should be compensated for.

**Evidence:** ADMISSIBILITY. Where there is a question as to whether a child was born in April or June, testimony that the weather was warm and pleasant at the time witness saw such newborn child is admissible to show that she saw the child in June, rather than in April.

CORROBORATIVE OR COLLATERAL MATTER. Corroborative evidence of a purely collateral matter, not in dispute, is properly excluded.

ANSWER TO REBUTTAL. Where the character of evidence sought to be introduced after the introduction of the rebuttal does not appear, it is properly excluded as not in response to the rebuttal evidence, since it is the duty of the party to advise the court if the evidence was to be other than defensive.

AGE OF INFANT: *Expert testimony.* Whether a baby seen by a witness on a particular occasion was a newborn baby, or one that had been born some time, is a proper subject of expert testimony, since it is very difficult, if not impossible, to so describe a child of tender age as to enable the jury to judge for themselves.

**Pleading:** SETTING OUT EVIDENCE. An amendment to an answer which pleads evidence is properly stricken.

**Remarks of Judge on Credibility:** NON-PREJUDICIAL. In an action for breach of marriage promise, a juror, on return to the jury into court to ascertain a certain fact, inquired whether defendant's statement concerning intercourse with plaintiff before she went to a certain place should be construed as affecting other portions of his testimony. One of his attorneys remarked "that it could not affect his credibility," to which the court, in an undertone responded, "It might," and then instructed them that they were the judges of the credibility of the witnesses.

*Held,* that no prejudice could have resulted from the remark of the court, as he gave no opinion as to whether the circumstance affected defendant's credibility.

*Appeal from Audubon District Court.*—HON. WALTER I. SMITH, Judge.

FRIDAY, MAY 11, 1900.

THE defendant appeals from judgment rendered on a verdict against him.—*Affirmed.*

*Nash, Phelps & Mosier, J. M. Graham* and *Delano & Meredith* for appellant.

*Fred H. Blume* and *John M. Griggs* for appellee.

LADD, J.—This action is based on an alleged breach of promise to marry, said to have been made December 2, 1895, and cemented by sexual intercourse two days later, resulting in the birth of a child August 26, 1896. Prior to all this however, in the springtime of 1893, there had been an indefinite arrangement to marry in the fall. Plaintiff was then a girl of sixteen years, and the defendant thirty years old. According to her story, they had become unduly intimate in August or the forepart of September of that year, and later she had gone to Mills county to remain until a child was born. He fixed October 1st as the date of their first improper relations, and declared he was not to marry her unless the child came after July 1, 1895. The time of the baby's birth is in dispute; she insisting it was born June 3d, and he that this occurred April 13th. She returned to her home in January, 1895, and thereafter no conversation was had concerning matrimony, nor were their previous relations resumed prior to the date first mentioned. The evidence bearing on the main issue (i. e. whether they became engaged to marry December 2, 1895) is in conflict, and the jury's verdict is final.

I.    The parentage of the first child necessarily had an important bearing on the outcome of the trial.    The jury might have concluded that if born June 3d it was defendant's, and not his if born April 13th.    Mrs. Salmonds was permitted to testify, from seeing the baby on a particular occasion, with reference to its being a newborn baby, or one that had been born some time, and also to particularly describe it.    She thought it must have been a newborn baby.    Undoubtedly she was competent to speak on the subject, as four children had been borne by her.    The appellant insists, however, that this was not a subject of expert testimony.    But it would have been very difficult, if not impossible, to so describe a child of such tender age as to enable the jury to judge whether at the time it was a few days or a few weeks old.    The rule which governs in such a case was thus stated in *Yahn v. City of Ottumwa,* 60 Iowa, 429:  "When the matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time," a conclusion may be given.    *Bizer v. Bizer,* 110 Iowa, 247; 1 Greenleaf Evidence, section 440, and note.    It was so held in *Benson v. McFadden,* 50 Ind. 431, where a witness was permitted to give his opinion of the age of another when a contract was signed.    In *State v. Smith,* 61 N. C. 302, medical experts were allowed to give their opinion that the injured girl was under ten years of age.    Testimony that the weather was warm and pleasant at the time was also admissible, as tending to show she saw the child in June, rather than in April.

II.    A part of John Salmond's deposition was excluded.    He had testified to hearing of the child's birth in April, and, on cross-examination, that Otis had so informed him, and that Watson had come to his place about the middle of that month.    Otis had previously sworn the conversation with Salmonds was on the afternoon of the day the

child was born, and that Watson came up while they were talking. The latter had testified to having quit work for McClain on that day, which he fixed as April 13th; and McClain, as the middle of the month. The questions and answers excluded, in so far as material to our inquiry, may be set out: "Q. Do you remember of any other circumstance happening on the same day that you first learned of the birth of this child of Mattie Stewart's? And, if so, relate. A. When Otis told me about it, it was in the afternoon. I recollect where he told me about it. He told me that his wife helped to catch the kid. He and I were at the barn, and I recollect of seeing a young fellow coming past Wilkin's house when he was telling me about it. Q. Who was this young man you refer to? A. Elmer Watson. Q. For whom did he work, and when did he quit work for said person, with reference to the time Otis related to you the circumstance of the birth of this child? A. Elmer or E. P. McClain. It was the same day." Undoubtedly a witness may state that he had a conversation with another, on the subject inquired about, at a specified time, or may mention some collateral circumstances, as a reason for recollecting the fact spoken of. Thompson, Trials, section 373; Gillett, Indirect and Collateral Evidence, section 213; *Blackwell v. Hamilton,* 47 Ala. 472; *Angell v. Rosebury,* 12 Mich. 241; *Railway Co. v. Van Steinburg,* 17 Mich. 99; *O'Hagan v. Dillon,* 76 N. Y. 170. It is a matter of human experience that memory of dates and events depends largely on others associated more or less closely with them, and for this reason a witness is allowed to speak of contemporaneous circumstances, not in detail, but of their existence, as confirming his recollection. That Salmonds and Otis had the talk is not disputed. The important inquiry was directed to the time of its occurrence. The answer to the first inquiry had no bearing on that subject. The second and third answers tended to corroborate Watson's testimony

that he quit work that day, which was not disputed, but in no manner to confirm the witness' recollection of the time. The rule ought not to be extended, save under peculiar circumstances, so as to permit the litigant to introduce evidence in corroboration of a purely collateral matter stated by another in aid of recollection. Possibly cases may arise where the main issue is so necessarily connected with the collateral fact as that such evidence ought to be received. See *Inhabitants of Northbrookfield v. Inhabitants of Warren,* 82 Mass. 173. How far such an investigation should be carried is ordinarily within the sound discretion of the court, and it may be safely said not to have been abused in prohibiting all corroboration of a purely collateral matter not in dispute.

III. One of the defenses interposed was that plaintiff was engaged to George Downing and unduly intimate with him at the time of, and for some months after, the alleged engagement with defendant. Downing testified to having made arrangements with one Davis for a house to live in, and to which the plaintiff had assented. Davis was asked whether Downing had arranged with him to rent a house. For the reasons above stated, there was no error in excluding this evidence.

IV. After the rebuttal evidence had been introduced, one Bell, who had been in Minnesota with defendant in 1893, was asked whether he corresponded with plaintiff during that time, and also whether he met her after her return from Mills county, with a view of showing a subsequent conversation. The evidence was excluded, as not in response to the rebuttal evidence already introduced. The court had warned counsel that the witness must be present and called by the time a belated witness on the other side arrived. Nothing in the question indicated the character of the evidence to be elicited, and, as the ground of the court's ruling clearly appeared, it was

the defendant's duty to advise the court of the fact, if the answers to be given were other than defensive in matter.

V.   Defendant was asked his recollection of obtaining information of the birth of the child in 1894, shortly after receiving a letter from plaintiff's sister.  As he afterwards declared he acquired knowledge of the event through this letter, the alleged error in not permitting an answer demands no attention.  The parts of the amendment to the answer were rightly stricken, as they pleaded evidence.  The ultimate facts, to sustain which evidence was admitted, remained.

VI.   The court instructed the jury that if plaintiff's "affections were in fact implicated, and she had become attached to the defendant, the wound and injury to her affections should be compensated for."  The appellant insists there was no evidence upon which to base such an instruction.  We are of opinion that proof of three engagements to marry, and the bearing of two children to him, is quite enough to warrant the inference of some feeling on the part of plaintiff.

VII.   The jurors, at their request, were brought into court to ascertain whether the defendant had testified to having sexual intercourse with plaintiff after her return from Mills county.  Being informed he had not, a juror inquired whether his statement concerning having intercourse before she went there should be construed as affecting other portions of his testimony.  One of his attorneys remarked "that it could not affect his credibility," to which the court, in an undertone, responded "that it might."  This was not addressed to the jurors, though two of them may have heard it.  The court thereupon called their attention to that part of the sixth instruction reading, "You are the judges of the credibility of the witnesses," and directed them back to their room for further deliberation.  No prejudice could have resulted from this remark of the court.  He gave no opinion as to whether the circum-

stance did affect the credibility of the witness. Whether it did, was left to the jury. That it might have done so is not open to controversy. Every part of his testimony had a bearing on every other portion of it, and, where a witness admits of having been unduly intimate with a woman during a certain period, that fact will ordinarily have some bearing on his credibility in denying a similar relation at a subsequent time. We discover no error in the record, and the judgment is AFFIRMED.