NELLIE M. CARPENTER *et al. vs.* BENJAMIN S. CARPENTER, EX.

MARCH 6, 1925.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

BARROWS, J. This case was heard on proponent's exceptions to the action of the trial court denying a motion for a new trial after a general verdict that a certain document offered as the last will of Wanton R. Carpenter, who died July 14, 1923, was not his will. An exception to the admission of certain testimony also was pressed.

The instrument was attacked on the ground of improper execution, lack of testamentary capacity and undue in-

fluence by testator's son Arthur. The first of these grounds was the "heart" of the case, as stated by the trial justice in his charge.

The evidence was in sharp conflict as to whether the will was attested by two witnesses present at the same time or whether witness Nichols had signed prior to witness Steadman and was not present with testator and Steadman when the latter signed. Nathan B. Lewis, the draftsman, and Nichols swore that all were present and signed at the same time. Steadman swore that neither Lewis nor Nichols was present when Steadman attested the will and that testator's signature as well as Nichols' was already upon the will at that time. All witnesses agreed that the execution, whether in the presence of Steadman alone, or of Steadman, Nichols and Lewis, took place on July 9, 1917, in the office at Steadman's store.

By contestants the testimony of one Caswell, a meat cutter for Steadman, was offered. Caswell testified that he remembered the day Carpenter came to the store "to have his will signed," and that no one was with him at that time; that testator was a visitor at the store at least once a week and at the time witness was referring to Steadman and testator went into the office together; that witness did not know what they went in there for; that he did not see either Nichols or Lewis at that tine. Caswell further stated that he knew nothing about the execution of this will nor did he know of his own knowledge that a will ever was executed by testator. He said that he had no way of fixing the date but that the occasion he had reference to was either 1916, '17 or '18. Counsel for contestants, on redirect examination, then asked: "Mr. Caswell, how do you fix the day that you speak of as the day Mr. Wanton R. Carpenter came in there to have his will signed?" This question, upon objection, the court ruled out because "It assumes a state of facts that he has recently denied." After some discussion, over proponent's objection and exception, the following question and answer appear: "Q. Now Mr. Caswell, you testified in

answer to my question that you remembered this day—how do you fix this particular day in your mind? A. Mr. Carpenter went out and Mr. Steadman came over to me, where we were cutting meat together up at the blocks, he at one block and me at the other, and he says, 'Wanton'—he always called him Wanton—'has made a will, and I just signed it.' I says, 'I hope it is a good one. It is time he done it.' That fixes it in my mind." The court then said: "This is admitted purely to fix the date of the occasion. It is not evidence of anything that was done there that Mr. Steadman may have told him had been done."

No evidence of the conversation referred to was offered through Steadman either before or subsequent to that above quoted. The question therefore is—could the utterance fix the date of the occasion apart from the truth of Steadman's statement as to what had just been done?

A time or occasion about which a witness testifies, but which he can not definitely fix, may be fixed by reference to a certain occurrence. The occurrence may be material or immaterial to the issue. It may be an act or it may be an utterance to or by the witness. When an utterance to a witness is so used to fix a time it has been termed a verbal act. It is merely an identifying mark and not probative of the truth of that which is said. There must always be, however, evidence to connect the occurrence and the occasion which it fixes else the testimony has no probative force. Wigmore on Evidence, 2nd ed., § 418, says: The utterance has no assertive value and "some courts refuse to allow the specific tenor of the utterance to be stated where a special danger exists of giving improper credit to it as a hearsay assertion." On the other hand, not only reference to but full repetition of such utterance has been permitted. That courts recognize the danger that the utterance will be used testimonially and seek, as did the trial justice here, to limit its use. *Hill* v. *North*, 34 Vt. 604; *Wilkins* v. *Metcalf*, 71 Vt. 103; *Rogers* v. *State*, 83 So. 359 (Ala.); *Barrow* v. *Georgia*, 80 Ga. 191; *State* v. *Dunn*, 109 Iowa, 750. Cf.

*Stewart* v. *Anderson,* 111 Ia. 329; *Commonwealth* v. *Piper,* 120 Mass. 185.

The occurrence which here was to be used as an identifying act was the utterance of Steadman to witness and the latter's reply. The occasion to be fixed was that when the will was executed. The vital question was whether Steadman and testator were alone *at the time of signing.* Caswell could know nothing of this personally because he never knew a will was signed except as told to him by Steadman. If it be conceded as do all the cases that we are not concerned with the truth of the utterance it is apparent that in this case the occasion, *i. e.,* the day when the will was signed, can not be fixed by the utterance alone. Steadman's testimony is needed to connect the utterance with the occasion. Without it Caswell's evidence can amount to only a statement that at some indefinite time he saw Steadman and testator together in the store without other company. Such evidence would prove nothing. Without the truth of Steadman's statement the occurrence and occasion were not linked up and the evidence which was admitted, purely to fix the occasion, could not so operate. In the last analysis the question simply amounted to, "How do you fix a particular day you have been talking about as the day the will was signed?" to which the answer was: "Because Steadman told me so." Without any evidence from Steadman that he did so tell Caswell or call his attention to the occasion Caswell's evidence was improperly admitted. *Whitney* v. *Houghton,* 125 Mass. 451, applies an even more stringent rule and bars a statement by defendant to a third person even though the occurrence and occasion are connected by the testimony of both.

Caswell's evidence was vital to the chief issue of the case. Every one was agreed that an honest mistake about execution could not have been made by Steadman. If incorrect his story was wilfully false. In his rescript denying the motion for a new trial, in which the trial justice sustained the verdict largely on the lack of proper execution, he refers

to the conflict of evidence regarding observance of the legal requirements and to the "positive and unimpeached testimony of Caswell" corroborating Steadman. Under the guise of fixing a time or identifying an occasion testimony prejudicial to the proponent, and which on the evidence before the court could not fix any time or occasion, was presented to the jury to corroborate Steadman's testimony that the will was improperly witnessed. It is not unlikely that this evidence seemed to the jury, as it plainly did to the trial court, to give probative force to Caswell's evidence that no one but Steadman was present when the will was signed. The exception of the proponent to the admission of this evidence is sustained.

We have indicated above that the question of execution was the core of the case and that a new trial on this phase of the case should be granted. The trial justice in his rescript says the preponderance of the evidence is not so manifest on the questions of undue influence and testamentary capacity. He rests his decision on lack of due execution. In his opinion, undue influence could be inferred as having been exercised on a weakened mind, testator at the time of the execution of the will being about seventy-eight years of age. It is apparent that the trial justice did not support the verdict on lack of testamentary capacity. This was only remotely involved because of the alleged undue influence and on the latter ground the rescript says, "there was no direct testimony as there rarely is in this sort of contest." We have read the testimony with care. No evidence appears of anything done or said by the son Arthur to unduly influence testator at any time or place. His comments relative to the other members of the family were denials of statements which his father told him they had made about him. No confidential relation existed between Arthur and his father. In his rescript the trial justice said, "Arthur was not a particularly favorite son. Indeed, none of the children appeared to be especially favored by the father." Counsel for contestants admit a shortage of

"tangible proof." All is inference and suspicion, arising from ill will between Arthur and contestants, alleged short-ness and irritability with others after seeing Arthur, to-gether with the unequal results to the widow and other con-testants, if the provisions of the will are allowed to stand.

Considering the amount of testator's estate when the will was executed, the treatment of the wife was not generous, that of Leroy was not unfair and that of Wanton and Gladys easily understandable. Inference of undue in-fluence is not inescapable. Subsequent conversion of cer-tain parcels of real estate into money did produce a situation where the operation of the will at the time of testator's decease would transfer a considerable portion of Leroy's original share to Arthur. Undue influence at the time of making the will, however, is not established thereby.

The trial justice's rescript shows that his sympathy was deeply moved. The widow fainted on the witness stand. Our examination of the evidence indicates that the trial justice fell into some errors in statements in his rescript that must have influenced him to infer undue influence, viz., the statement that Arthur alone knew that the will was being prepared and of its execution; that testator, at the time of his marriage, had "comparatively slight means"; that the will attempted to distribute property, in a large measure acquired by the joint labors of husband and wife; that the will was the result of Arthur's "unscrupulous machinations." We find no testimony to support these statements. In fact the positive evidence is to the contrary. They doubtless arose from the atmosphere of the trial. Many questions contain innuendoes which could not have been forgotten in spite of the denials in their answer. In our opinion, after considering all aspects of the case we believe that another jury should pass upon it.

In view of the nature of claims advanced in opposition to the will in order to bring into relief the real fact findings of the jury a special verdict might be desirable upon each of the questions involved: testamentary capacity; undue in-

fluence, and proper execution.    Gen. Laws, 1923, Chap. 341,
§ 6 (4983).

Proponent's exception one is sustained, as is also his exception to the action of the trial court denying the motion for a new trial.    The case is remitted to the Superior Court for a new trial.

*James O. Watts, William A. Graham, Comstock & Canning,* for appellants.

*Samuel H. Davis, Leonidas Pouliot, Jr., James C. Collins, Tillinghast & Collins,* for executor.