## 71438. GAINES v. THE STATE.
(341 SE2d 252)

BIRDSONG, Presiding Judge.

The defendant, John Gaines, appeals his conviction of the offenses of theft by taking and the unauthorized practice of law. The indictment charged Gaines "did *take* FOUR THOUSAND NINE HUNDRED AND TWENTY-FIVE DOLLARS ($4,925.00) in money, the property of Mary Ann Thompson . . . with the intention of depriving said owner of said property. . . ." (Emphasis supplied.) The count alleging the unauthorized practice of law charged Gaines with unlawfully using the title of "attorney" in such a manner as to convey the impression he was entitled to practice law or furnish legal advice, services, or counsel.

Gaines was introduced to Ms. Thompson by a mutual friend. Ms. Thompson said the friend introduced Gaines as a "lawyer." The friend denied this but admitted: "I just kind of gathered that he was kind of an attorney or something like that." Ms. Thompson had some difficulty with a tenant in a house she owned in Tennessee and she said Gaines volunteered to help her, "[a]s my attorney." He did not charge her anything, but advised her "lawyers, you know, did things like this for people that were having a hard time. . . ." Gaines prepared a bill of sale for her and arranged for a sale of her property through a realtor in Tennessee. Gaines identified his signature on a letter to the realtor, enclosing the sales contract, which read: "John Gaines, Attorney for Ms. Thompson." He said it was his signature but the line following his name, "Attorney for Ms. Thompson" was not on the letter when he signed it. Ms. Thompson said Gaines brought her a check in the amount of $6,000 from the sale of the house and instructed her to indorse it and write on the back of the check: "Constitutes loan payment from John Gaines." She asked him the purpose for this and he replied "trust me." He told her he was going to put the money down on the purchase of a house. She began pressing him for a return of the money and he gave her $300. Later he returned small amounts totalling about $1,000. She told her children about her problem and one daughter spoke to Gaines and asked him if he had the money from the sale of her mother's house. Gaines said "he did not have it to give to her right now," but she saw Gaines give her mother some money. She asked Gaines for a document stating he had the money but he said he would not say he would sign anything. A complaint was sworn out and this indictment followed.

Gaines testified that Ms. Thompson was a drug dealer. She was about to lose her home in Tennessee and he loaned her $1,500 in cash to fix up the house so she could sell it. Their relationship became "romantic." He witnessed Thompson use a needle to inject drugs, take other drugs orally, and smoke marijuana. He saw as many as 25

to 30 people in one evening purchase drugs from her. They paid $30 to $40 for packets of drugs. Gaines testified that Ms. Thompson said her drug supplier was going to kill her if she did not pay her drug bill. She wanted to sell her house to pay off her drug bill. When she received the $6,000 check from the sale of the house, she gave it to him. He deposited the check in his checking account. He had loaned her approximately $8,000 and she still owes him $2,000. He gave her $3,000 in cash one time, and $1,500 in cash on another occasion. He has no documentation to show that Ms. Thompson borrowed the money. He is not an attorney. He is an auto mechanic but is currently out of work. He testified he was out of work when he was lending the money to Ms. Thompson.

The defendant's son, Johnny, now 17 years of age, testified that Ms. Thompson called him at their home and asked him for money. He was then working as a security guard and took her $200. He lent her a total of $500. He asked her for a receipt but did not get one. When he refused to lend her more money, she threatened to have his father put in jail. The signatures on the letter and the check were not like his father's signature.

Mrs. Leigh Nash, 75 years of age, met Gaines in 1980. He advised her he was a lawyer and she should fire her present attorney and he would settle her husband's estate. He collected her rent payments but did not turn the checks over to her. She spoke to the tenants and they thought Gaines owned the building. She gave Gaines $400 to have her carport re-roofed. It has never been done. She gave him money to pay off her husband's funeral and doctor's bills. They were not paid. He borrowed $2,000 from her to purchase some land. He has never repaid the loan. She let Gaines have $6,500 to start building some condominiums. It has not been repaid. He took her car to have the transmission repaired. She gave him $352 for parts. He did not return the car until she threatened to take out a warrant for his arrest. The car was returned, without a transmission, battery, and some of the tires.

Gaines appeals his convictions. *Held*:

1. Gaines alleges the court erred in charging the jury the entirety of OCGA § 16-8-2, arguing that such charge authorized the jury to find him guilty "for a crime not included in the indictment." Our code sets forth two methods of commission of a "theft by taking." The first mode is committed by one who "unlawfully takes" the property of another with the intention of depriving him of the property. The same crime may be committed by one "being in lawful possession thereof [who] unlawfully appropriates any property of another with the intention of depriving him of the property." The state elected to charge Gaines with the first method by indicting him on a charge of unlawfully *taking* the property of Ms. Thompson. However, the court

gave in charge to the jury both methods of how the offense could be committed and then gave a further explanation of the word "deprive" in considering the second method, as "without justification to withhold property of another permanently or temporarily or to dispose of the property so as to make it unlikely that the owner will recover it." The trial court did not give a limiting instruction thereafter as to which of the two methods the jury could consider. The defendant argues that this charge was error as a matter of law. We agree.

"Conviction upon a charge not made would be sheer denial of due process." *DeJonge v. Oregon*, 299 U. S. 353, 362 (57 SC 255, 81 LE 278). It is reversible error to deprive a defendant of his right "to be tried for a felony only on charges presented in an indictment returned by a grand jury." *Stirone v. United States*, 361 U. S. 212 (b) (80 SC 270, 4 LE2d 252). The state elected to charge defendant with the "unlawful taking" method of "theft by taking." "The state thus was bound by its election. To expose [an accused] to conviction of another form of [theft by taking] than that alleged would be to countenance a material variance between the allegata and the probata, a result that has been prohibited and condemned by this state. *Walker v. State*, 146 Ga. App. 237, 239-243 (246 SE2d 206)." *Griffin v. State*, 168 Ga. App. 696, 699 (310 SE2d 278).

In *Walker*, supra, we emphasized that a charge can be misleading to a jury "where it gives several definitions of the offense for which [an] accused is being tried. . . ." 1 Reid's Branson Instructions to Juries 293, 296, § 103. "It is reversible error for the court to submit a case to the jury upon a theory entirely different from that claimed in the [indictment or accusation]. . . ." 1 Blashfield's Instructions to Juries 215, § 94; accord 1 Reid's Branson Instructions to Juries 347, § 118. Even our earlier Georgia cases required " '[i]f the indictment sets out the offense as done in a particular way, the proof must show it so, or there will be a variance.' " *Fulford v. State*, 50 Ga. 591, 593. The trial court erred in giving the entire code section in charge, emphasizing and explaining words in a method of commission of the offense which was not charged, and in failing to give a limiting instruction concerning which method could be considered by the jury. *Owens v. State*, 173 Ga. App. 309, 312 (326 SE2d 509); *Hack v. State*, 168 Ga. App. 927 (3) (311 SE2d 211); *Searcy v. State*, 168 Ga. App. 233 (1) (308 SE2d 621); *Cantrell v. State*, 162 Ga. App. 42, 43 (290 SE2d 140); *Robinson v. State*, 152 Ga. App. 296 (262 SE2d 577).

The state contends that defendant "did not reserve his objections to the charge," and that any possible error in the giving of the alternative methods of commission of the theft by taking offense was cured by the subsequent instruction by the court when it instructed the jury if they "should believe beyond a reasonable doubt that the defendant is guilty, *as charged.* . . ."

Addressing the last issue first, we note that the court charged on the complete statute of theft by taking, then the meaning of the word "deprive" as it was used in the method not charged in the indictment, and *concluded* his charge on theft by taking by advising the jury that it is a defense to theft by taking that the defendant acted under an honest claim of right to the property. Thereafter, the court charged on the unauthorized practice of law — limiting his charge to the two types of unauthorized practice alleged in the indictment — even though the statute lists six types. The court then gave a charge on good character in which it instructed that *"if the jury should believe beyond a reasonable doubt that the defendant is guilty as charged,* even though there is evidence of good character, you would be authorized to convict him, even though there is evidence of good character." (Emphasis supplied.) The state contends that the italicized portion of the charge on good character cures any error in the giving of the entire charge on theft by taking. We cannot agree. By giving the entire statute in charge on theft by taking, the court left it to the jury to convict on either theory instructed, even though it was not charged. We find no reasonable construction of the charge which would authorize us to find that words taken out of context from the middle of a charge on good character places a limitation on a previous charge on theft by taking.

We turn now to the contention of the state that the defendant waived his right to enumerate error on the charge of the court. We commence our consideration of this issue by going first to the basic law involved. OCGA § 5-5-24 (a) expressly exempts a defendant in a criminal case from making objections on the record before the return of the verdict in order to preserve error. After the enactment of this statutory exemption in 1968, certain exceptions to the exemption were carved out by the Supreme Court. Thus, first it was held that where there was a *failure to charge by way of omission,* the defendant could be charged with a waiver for it was incumbent upon the defendant to make known to the trial court those matters deemed necessary in the defense and silence brought about the waiver. See *Thomas v. State,* 233 Ga. 237 (4) (210 SE2d 675); *Spear v. State,* 230 Ga. 74 (1) (195 SE2d 397). However, the Supreme Court also recognized that the negative command of OCGA § 5-5-24 (a) precluded waiver (by silence) as to an erroneous charge given by the trial court. *Thomas v. State,* 234 Ga. 615, 618 (216 SE2d 859). Nevertheless, several reported cases involving a charge given have resulted in waiver by the defendant. Thus, the Supreme Court further refined the import of the negative command of OCGA § 5-5-24 (a) in cases where some action was taken by the defendant. The Supreme Court has imposed the doctrine of waiver in criminal cases where by the trial tactics of the defendant, the court has been induced to follow a course of instruc-

tional conduct that results in an allegedly erroneous charge. It has been held in such cases that the error was induced and gives no ground for reversal. *Edwards v. State*, 235 Ga. 603 (2) (221 SE2d 28). Further, by developments emanating from the trial court, there has evolved a further refinement of the negative command wherein the trial court requires a criminal defendant to make objection to an erroneous charge actually given. In this event, the Supreme Court has held that counsel *must* state his objections or at a minimum reserve his rights to make objections on motion for new trial or on appeal. See *Jackson v. State*, 246 Ga. 459, 460 (271 SE2d 855); *Gaither v. State*, 234 Ga. 465 (216 SE2d 324).

From this mix, we discern the current rule to be that where an omission to charge is involved, there is a requirement to request a charge and/or object to its omission or suffer a waiver; but there is *no* requirement to enter an objection to an erroneous charge given unless the trial court specifically requires the defendant to enter objections prior to the return of the verdict or reserve the right to make such an objection. If defense counsel is informed that he must exercise that right and states his objection, states he has none, or reserves his rights, the intent of the negative command of OCGA § 5-5-24 (a) is observed both in letter and spirit.

We observe that in *Montgomery v. State*, 173 Ga. App. 570, 571 (2) (a) (327 SE2d 770), the enumerated error dealt with an omission to charge. Thus even in the absence of a demand by the trial court to the defendant to voice any objections to the charge, there was a waiver under the authority of *Spear v. State*, 230 Ga. 74, supra. Further, in *Vowell v. State*, 174 Ga. App. 426 (330 SE2d 167), after a demand by the court to "counsel" and thus an invitation apparently to both counsel for exceptions to the charge, the defense made specific exceptions. On appeal, enumeration of error was made to a different part of the charge. This court held that the defendant having raised a specific objection to the charge upon the demand of the trial court, waived other objection that could have been made in response to that demand.

It is readily apparent from the inception of the exception to the negative command of OCGA § 5-5-24 (a) that the Supreme Court has always required a showing of record that the defendant was specifically afforded an opportunity affirmatively and expressly to make objection or reserve the right so to do before a waiver could be invoked. One of the first cases in which this specific inquiry to the defendant appears is in *White v. State*, 243 Ga. 250, 251 (253 SE2d 694). It has consistently been followed in *Jackson v. State*, 246 Ga. 459, supra; *Brown v. State*, 154 Ga. App. 358, 359 (1) (268 SE2d 731); *Montgomery v. State*, 173 Ga. App. 570, 571 (2a), supra, and *Vowell v. State*, 174 Ga. App. 426, supra.

In this case the facts reflect that the trial court directed his demand for exceptions only to the state. The state objected to a charge on character given by the court. The court inquired of the defense if the defendant believed character was placed in issue. Upon a negative reply by the defense, but at the request of the state, the character charge was withdrawn. Thereafter but still without any demand to the defense for its exceptions, the defense voiced concern over a possible slip of the tongue. The trial court at the time of the withdrawal of the character charge corrected the possible slip of the tongue. At no time was the defense specifically required to enter any exceptions it might have had to the charge.

Thus, the question resolves itself to one whether a gratuitous statement by the defense in agreeing with an objection to the charge by the state and singling out a possible slip of the tongue, in the absence of a specific direction of the court to make exceptions, amounts to the waiver of all other objections to the charge so as to preclude the consideration of a different portion of the charge on appeal.

Our conclusion is based upon the important legal principle that in an area of substantive rights as important as the charge of the court, waiver of those rights must be an affirmative knowing relinquishment of those rights. In each of the cases where waiver has been found, defense counsel was placed on notice by the trial court that the time for exceptions had arrived and either exceptions had to be registered or reserved or they were waived. The explicit demand has been required in each case, we believe, because so important a right is not waived merely by silence. Even though a partial objection was entered by the defense, there was no demand placed upon the defense to enter exceptions. Thus if we construe the existing law to establish a waiver by inaction, i.e., silence under the facts of this case but in the absence of such a demand, we would establish the rule that mere silence of the defendant as to other objections is tantamount to an affirmative waiver. Such a conclusion would have the effect of wholly nullifying the negative command of OCGA § 5-5-24 (a) which unequivocally provides that a defendant does not have to enter exceptions at the conclusion of the trial in the absence of a demand placed upon him so to do. Inasmuch as Gaines was not required by the trial court affirmatively to state exceptions to the charge in this case, we will not impose a waiver by mere silence in this case. See *McDuffie v. Jones*, 248 Ga. 544 (283 SE2d 601). Moreover, we also have concern that the nature of the charge possibly authorized a conviction for a crime not charged. Thus, we further conclude the error is of such an egregious nature as to invoke for the appellant the provisions of OCGA § 5-5-24 (c) thus allowing this court to consider the error even assuming, arguendo, the possibility of a waiver. See *Yopp v. State*, 131 Ga. 593, 598 (62 SE 1036); *Ward v. State*, 39 Ga. App. 570 (147

SE 780).

2. The second enumeration of error is mooted by our holding in Division 1 above.

3. There is sufficient evidence of record, when viewed in the light favorable to the verdict, to enable any rational trier of fact to find the existence of the offense of unauthorized practice of law beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Rutledge v. State*, 245 Ga. 768, 769 (267 SE2d 199).

4. "It is well recognized that when evidence is admitted for one purpose, as it was in the instant case, it is not error for the court to fail to instruct the jury to limit its consideration to the one purpose for which it is admissible, *in the absence of a request to so instruct the jury.*" *Harrell v. State*, 241 Ga. 181, 186 (243 SE2d 890). Mrs. Nash's testimony was admitted for the limited purpose of impeachment of the defendant and counsel did not request a limiting instruction. No reversible error appears.

*Judgment affirmed in part and reversed in part. Sognier, J., concurs. Carley, J., concurs in the judgment only.*

DECIDED FEBRUARY 5, 1986 —
REHEARING DENIED FEBRUARY 13, 1986 —

*Virginia W. Tinkler*, for appellant.

*Robert E. Wilson, District Attorney, Barbara Conroy, R. Stephen Roberts, Assistant District Attorneys*, for appellee.