## 74139. CHAMBERS v. THE STATE.

(360 SE2d 438)

DEEN, Presiding Judge.

Larry Chambers appeals from a jury verdict of guilty of the offense of cruelty to a child. Chambers was the live-in boyfriend of Delores King, who had a three-year-old daughter named Brandy. Chambers came home one evening and found Brandy had been playing outside the house and was "dirty." He took her into the bedroom and Ms. King heard Brandy crying. When she arrived at the bedroom door, she saw Chambers holding Brandy on the bed with his knee in her back and whipping her with a belt. She saw him strike Brandy "three or four" times. The State introduced photographs of Brandy showing bruises on her buttocks and legs caused by the belt. Ms. King testified that later that same day, Chambers bit Brandy on the lips. He told Ms. King it would make the child "tough."

Ms. King had Brandy examined by Dr. Rose Barland, a pediatrician. Dr. Barland found bruises on Brandy's buttocks and arms. She asked the child who did this to her. Brandy told her it was "her mom's boyfriend." Her notes did not reflect any bite marks. Katie Connell, sister of Ms. King, visited her and saw that Brandy had belt marks on her arms and face and asked Ms. King if she beat the child. Ms. King said that she had. In the presence of Chambers, "Brandy said, 'No mama, you didn't do it. Larry [Chambers] done it [sic].'" Chambers "never said a word. He just hung his head." Ms. Connell saw "that place [Chambers] bit [Brandy] on the lip." Diane Jones, another sister of Ms. King, visited King and asked Brandy about "those bite marks" and "she said Larry had bit her [sic]."

Chambers admitted that he had disciplined the child, but that he did so at the request of the mother. He also admitted that he and Ms. King took the child to Florida after Ms. King's sisters had seen the results of his disciplining the child. After Ms. King called her family from Florida to let them know where she was, they returned to Georgia. After Ms. King and Brandy returned to Georgia, Chambers went to Louisiana for approximately one month. *Held*:

1. The trial court began its charge to the jury by advising that "the State, in this bill of indictment, accuses Larry Chambers with the offense of cruelty to a child on the date and under the circumstances set forth in this indictment." The indictment, which went out with the jury during its deliberations, accused Chambers of maliciously causing "cruel physical and mental pain by beating her with a belt and biting her." The trial court's subsequent definition of cruelty to children as maliciously causing "a child under the age of eighteen cruel or excessive physical or mental pain" could not have confused or misled the jury from its assigned task of deciding whether Chambers had committed the offense of cruelty to children as charged in the

indictment, *viz.*, by maliciously causing cruel (as opposed to excessive) physical or mental pain. Chambers's contention that the trial court failed to confine the consideration of the jury to the manner of commission of the offense as alleged in the indictment, accordingly, is without merit.

2. Chambers also contends that the trial court erred in admitting the testimony of a state witness concerning a statement made to her by Ms. King in the presence of Chambers. Virginia Morris, a sister of Ms. King, was permitted to testify, over objection, to a telephone conversation she had with Ms. King while the latter was in Florida. Morris testified that Chambers was "standing beside" Ms. King when King denied inflicting these injuries to her daughter.

We find no reversible error for a number of reasons. First, the statement made by Ms. King was made in the presence of Chambers. "A witness may testify as to what he saw and heard in the defendant's presence." *Moore v. State*, 240 Ga. 210, 212 (240 SE2d 68); accord *Grindle v. State*, 151 Ga. App. 164 (2) (259 SE2d 166); *Broome v. State*, 141 Ga. App. 538 (2) (233 SE2d 883). Secondly, this same evidence was testified to by Ms. King when she was a witness. Where the same evidence is admitted elsewhere, without objection, the objection is properly overruled. *Tucker v. Mappin*, 149 Ga. App. 847, 848 (256 SE2d 135). Last, but by no means the least, the declarant of the alleged hearsay was subsequently called as a witness to testify as to the subject matter discussed in the telephone conversation and appellant was afforded confrontation and cross-examination. See generally Green, Ga. Law of Evidence 497, 502, §§ 221, 224.

*Judgment affirmed. McMurray, P. J., Banke, P. J., Carley and Beasley, JJ., concur. Beasley, J., also concurs specially. Birdsong, C. J., Sognier, Pope and Benham, JJ., dissent.*

BEASLEY, Judge, concurring specially.

I concur.

According to the statute, the crime of "cruelty to children" can be committed in one of two ways: "(a) . . . wilfully depriv[ing] the child of necessary sustenance to the extent that the child's health or well-being is jeopardized," or "(b) . . . maliciously caus[ing] a child under the age of 18 cruel or excessive physical or mental pain." These are the two *methods* or *manners* of treating children which are deemed criminal.

It is the second method, maliciously causing pain, which is charged here. The words "cruel," "excessive," "physical," and "mental" are adjectives, used by the legislature to describe the type of pain which when maliciously inflicted on a child constitutes criminal behavior. They provide a definition. See *Allen v. State*, 174 Ga. App. 206, 208 (3) (329 SE2d 586) (1985).

These words are not different *methods*. "Method" is a noun, not an adjective. Methods are the means by which some end result is accomplished. It is a procedure or process, a way or manner of doing something. Webster's New Intl. Dictionary, 2nd ed.

For example, a person commits the crime of theft by shoplifting in one of five ways, i.e., when he "conceals, or takes possession," or "alters," or "transfers," or "interchanges," or "wrongfully causes." OCGA § 16-8-14. See *Nesmith v. State*, 183 Ga. App. 529 (359 SE2d 421) (1987). This statutory scheme of prohibiting certain acts which are expressly described by their various methods, that is, by *how* they are committed, prevents the prohibition from being vague. *Davis v. State*, 234 Ga. 730, 733 (6) (218 SE2d 20) (1975).[1] See *Wilson v. State*, 245 Ga. 49, 53 (262 SE2d 810) (1980).

So it is in this case. Defendant was charged in the indictment, and in the court's charge, with committing cruelty to children. How? By maliciously causing a certain type of pain, pain described as "cruel" and as "physical" and "mental." It is, according to the statute, only "cruel" pain, or "excessive" pain, which is criminal. If "cruel" pain is not always "excessive" pain, it is difficult to detect a difference in this case.

If anything, the court's charge, which included the adjective "excessive" in reading the statute, added a burden to the state's side. The concept of excessiveness, which relates to the degree of pain, was injected although the state had not assumed that further burden. If the jury truly noticed it, focused as they were on the words in the indictment, it benefited rather than harmed defendant.

BIRDSONG, Chief Judge, dissenting.

I respectfully dissent from Division 1 and the judgment of this Court. The appellant contends the trial court erred "in not limiting the consideration of the jury to the allegations of the indictment by appropriate remedial instructions *in response to the inquiry by the jury*." (Emphasis supplied.) This issue is not addressed by the majority.

Appellant was indicted upon a charge of maliciously causing "a child under the age of 18, *cruel physical and mental pain* by beating her with a belt and biting her." (Emphasis supplied.) The trial court did not read the indictment to the jury but merely referred to the offense "under the circumstances set forth in this indictment" and proceeded to charge the jury that *"any person commits the offense* of cruelty to children *when he maliciously causes* a child under the age of eighteen *cruel or excessive physical or mental pain*." (Emphasis

---

[1] Although *Davis* construed the predecessor statute, Code § 26-2801, the words are the same in the current version.

supplied.) After entering closed session and deliberations, the jury requested additional instructions from the court, by asking: "Judge, we have been discussing this indictment and we want to know do we find guilty or not guilty on this indictment word for word, exactly the way it is written. There has been some question as to the evidence that has been presented . . . do we vote on this indictment word for word[?]" The trial court recharged the jury: "I will read to you the definition of the crime of cruelty to children. A person commits the offense of cruelty to children when he maliciously causes a child under the age of eighteen *cruel or excessive physical or mental pain.* That is the extent of the Court's response to your inquiry." (Emphasis supplied.) Appellant's counsel objected to the recharge on two bases: (1) it had "the effect of giving the jury a message that they could find [Chambers] guilty on something less than what was charged in the indictment . . ." and (2) in the recharge the court "included the language of 'excessive or' . . . that is not charged in the indictment."

The issue presented by the indictment, the charge, the objection and the enumerated error is: Where a statute defines a crime as capable of commission in any one of several ways, and the indictment alleges the offense was committed in one specific way, and the court charges the jury the offense is committed by "any person" when he commits any of the several acts, and the defendant's counsel directs the Court's attention to the addition of language not alleged in the indictment and the trial court refuses to restrict the method of commission of the offense to that alleged in the indictment, is this reversible error? In a whole court case, *Walker v. State*, 146 Ga. App. 237 (246 SE2d 206), we held that it was. Our Supreme Court, in *Lumpkin v. State*, 249 Ga. 834, 836 (295 SE2d 86), analyzed *Walker* and found: "The court there correctly held that where no remedial instructions were given, the charge was erroneous as a matter of law because of a fatal variance between the proof at trial and the indictment returned by the grand jury."

This is not a new or a novel concept and *Walker* charted no course different from that stated by the United States Supreme Court many times in the past. Basic due process is at issue. Is an accused entitled to be tried on the charge made by the indictment, or can he be convicted in conformity to a charge by the trial court of differing methods of commission of the offense charged?

Our Code, OCGA § 16-5-70, provides, inter alia, that the offense of cruelty to children is committed when a person "maliciously causes a child under the age of 18 *cruel or excessive physical or mental pain.*" (Emphasis supplied.) Thus, the legislature delineated nine alternative ways in which this offense could be committed: (1) cruel physical pain, (2) excessive physical pain, (3) cruel mental pain, (4) excessive mental pain, (5) cruel physical and mental pain, (6) exces-

sive physical and mental pain, (7) cruel and excessive physical pain, (8) cruel and excessive mental pain, or (9) cruel and excessive physical and mental pain. The state elected to indict Chambers with the fifth method, i.e., "cruel physical and mental pain." Hence, this particular method of commission of this offense had to be proved and "[a] trial judge in a criminal case should deliver a charge tailored to the indictment and adjusted to the evidence." *State v. Braddy*, 254 Ga. 366, 368 (330 SE2d 338). The charge in the instant case was not "tailored to the indictment," but permitted conviction upon proof of any one of the nine different methods of commission of the offense.

"In *Walker*, supra, we emphasized that a charge can be misleading to a jury 'where it gives several definitions of the offense for which [an] accused is being tried.' [Cit.] 'It is reversible error for the court to submit a case to the jury upon a theory entirely different from that claimed in the [indictment].' [Cits.] Even our earlier Georgia cases required ' "[i]f the indictment sets out the offense as done in a particular way, the proof must show it so, or there will be a variance." ' " *Gaines v. State*, 177 Ga. App. 795, 797 (341 SE2d 252); accord *Sarnie v. State*, 247 Ga. 414, 415 (276 SE2d 589). "Conviction upon a charge not made [in the indictment] would be sheer denial of due process." *DeJonge v. Oregon*, 299 U. S. 353, 362 (57 SC 255, 81 LE 278). Hence, it is reversible error to deprive a defendant of the right "to be tried for a felony only on charges presented in an indictment returned by a grand jury." *Stirone v. United States*, 361 U. S. 212 (b) (80 SC 270, 4 LE2d 252). "It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process." *Jackson v. Virginia*, 443 U. S. 307, 314 (99 SC 2781, 61 LE2d 560) (1979).

The U. S. Supreme Court faced this *same problem* in 1905 in *Clyatt v. United States*, 197 U. S. 207 (25 SC 429, 49 LE 726), in which a Georgia man was convicted of "peonage," i.e., involuntary servitude. The Supreme Court cited the statute which defined "peonage" as being committed when any person "holds, arrests, returns, or causes to be held, arrested, or returned . . . any person to a condition of peonage." Id. at 208. The indictment charged the defendant did "knowingly return one Will Gordon and one Mose Ridley to a condition of peonage" in the State of Georgia from the State of Florida. However, the evidence showed that neither Gordon nor Ridley had ever been held in peonage prior to the defendant bringing them to Georgia. The Court held: "It was essential, therefore, under the charge in this case to show that Gordon and Ridley had been in a condition of peonage, to which, by the act of the defendant, they were returned. We are not at liberty to transform this indictment into one charging that the defendant held them in a condition or state of peonage, or that he arrested them with a view of placing them in such

condition or state. The pleader has seen fit to charge a return to a condition of peonage. The defendant had a right to rely upon that as the charge, and to either offer testimony to show that Gordon and Ridley had never been in a condition of peonage or to rest upon the Government's omission of proof of that fact." 197 U. S. at 219-220. The conviction was reversed. The rule is as old as it is sound. If you indict an accused as having committed an offense in a specified way, the evidence and the charge to the jury must conform to the indictment or a fatal variance results. *McCrary v. State*, 252 Ga. 521, 525 (314 SE2d 662); *DeFrancis v. Manning*, 246 Ga. 307 (271 SE2d 209); *DePalma v. State*, 225 Ga. 465 (3) (169 SE2d 801); *Evans v. State*, 138 Ga. App. 620, 621 (227 SE2d 448); *Royal v. State*, 134 Ga. App. 203 (213 SE2d 561); *Hancock v. State*, 127 Ga. App. 21, 22 (192 SE2d 435). The state elected to indict the defendant as having committed this offense by "cruel physical and mental pain" and is bound by its election. *Griffin v. State*, 168 Ga. App. 696, 699 (310 SE2d 278).

Of course, it is well established that a charge of a code section in its entirety is not error where a part thereof is applicable, if it does not appear that the inapplicable part misled the jury. *Searcy v. State*, 168 Ga. App. 233 (1) (308 SE2d 621). However, where the statute charged as being violated defines a crime which can be committed in any one of several ways, but the indictment charges the offense as being committed in one specific way, then the charge of the entire code section — which would permit the jury to consider the offense as being committed in any one of the several methods, cannot be said as a matter of law not to have misled the jury. *Searcy*, supra; *Walker*, supra at 244. And, in the instant case, this is exactly what happened. The jury was misled and confused, by the conflict between the indictment and the charge and requested clarifying instructions from the court on this issue by asking: "[D]o we find guilty or not guilty on this indictment word for word, exactly the way it is written[?]" The only logical reason for requesting clarification was to resolve the conflict. In essence they were asking: Must "we find guilty or not guilty on this indictment word for word" the way it is charged, *or* can we follow the court's charge that this offense is committed when *any person* "causes a child under the age of eighteen cruel or excessive physical or mental pain." The court could have cured its error by restricting its charge on the entire code section, to the method charged in the indictment. *Owens v. State*, 173 Ga. App. 309, 312 (326 SE2d 509). Rather than curing the error pointed out to the court by counsel, it compounded the error by assuring the jury it could properly reach a finding of guilty if it found any one of the nine different methods. This is the error enumerated by counsel, i.e., the court "erred in not limiting the consideration of the jury to the allegations of the indictment by appropriate remedial instructions in response to the inquiry

by the jury" as required by *Owens*, supra. No such limiting or remedial instruction was given in the instant case. The procedure approved by the majority has been condemned by this Court (*Gaines*, supra; *Owens*, supra; *Hack v. State*, 168 Ga. App. 927 (3) (311 SE2d 211); *Griffin*, supra; *Cantrell v. State*, 162 Ga. App. 42, 43 (290 SE2d 140); *Robinson v. State*, 152 GA. App. 296, 297 (262 SE2d 577); *Reed v. State*, 148 Ga. App. 264 (251 SE2d 148); *Walker*, supra); the Georgia Supreme Court (*Lumpkin*, supra; *Sarnie*, supra); and the United States Supreme Court (*DeJonge*, supra; *Stirone*, supra; *Clyatt*, supra).

Reversal is required.

I respectfully dissent. I am authorized to state that Judge Sognier, Judge Pope and Judge Benham join in this dissent.

DECIDED JULY 15, 1987 —
REHEARING DENIED JULY 30, 1987 — 

*Paul Fryer*, for appellant.
*J. Brown Moseley, District Attorney*, for appellee.