## A93A2083. JARRETT v. THE STATE.
### (441 SE2d 843)

McMurray, Presiding Judge.

Defendant was convicted of driving under the influence of alcohol with a blood alcohol concentration of .10 grams or more within three hours after operating a moving vehicle in violation of OCGA § 40-6-391 (a) (4); driving without a license in violation of OCGA § 40-5-20 (a) and operating a motorcycle without a helmet in violation of OCGA § 40-6-315 (a). The case was tried before a jury, but the evidence was not taken down or transcribed. However, the parties entered a transcript from recollection pursuant to OCGA § 5-6-41 (g) which transcript provided, in pertinent part, as follows:

"On March 20, 1992, Trooper P.B. Stowe of the Georgia State Patrol, while patrolling in Bartow County, observed the defendant, James Hugh Jarrett, walking north along Highway 61, about one mile north of the Paulding County line. The defendant was walking approximately one-hundred yards behind another person, who was later identified as Ronnie Jarrett, the nephew of the defendant. . . . After Trooper Stowe passed by the men as he drove south on Highway 61, he turned his patrol car around to question them, because both men appeared to be intoxicated. . . . When Trooper Stowe returned to where the men were walking, the defendant had disappeared. Upon questioning Ronnie Jarrett, Trooper Stowe placed him under arrest for pedestrian under the influence. The trooper placed Ronnie Jarrett in the patrol car, drove south along Highway 61 and spotted the defendant. . . . Ronnie Jarrett told the trooper that the men had been riding a motorcycle which had crashed. Trooper Stowe found the motorcycle, resting on its kickstand, parked behind some bushes in the front yard of a residence located on a hill off of the highway. The trooper stated it appeared the cycle had been wrecked. The trooper testified that it was very unlikely that Ronnie Jarrett could have driven the cycle, because Ronnie Jarrett has only one hand and the cycle — with controls on both sides of the handlebar — normally requires two hands to operate. The trooper noticed that the defendant had a fresh cut on his forehead and that Ronnie Jarrett had some abrasions around one of his ankles. . . . The defendant was extremely intoxicated and later registered a 0.33% blood-alcohol content on his intoximeter test conducted at the Bartow County Sheriff's Department. . . . The defendant, when questioned by Trooper Stowe at the scene, denied driving the motorcycle. However, over defendant's objection, Trooper Stowe testified that Ronnie Jarrett — who was not

present at trial and did not testify — stated that the defendant had been driving the cycle and that he, Ronnie, had been a passenger. Ronnie told the trooper that the cycle had wrecked a couple of times that afternoon. The trooper testified that Ronnie Jarrett made this statement in the presence of the defendant and that the defendant made no direct response to it. However, the trooper also testified on cross examination that the defendant consistently denied driving the cycle at other times during the questioning. . . .

"The defendant . . . testified that he owned the motorcycle which the trooper found. . . . The defendant testified that . . . he had not driven the cycle for over a year before that day. On the day of the arrest, the defendant testified that he was trying to sell his cycle to two friends named Jim and Bruce Kelly. To prepare it for sale, the defendant and his nephew Ronnie Jarrett worked on the cycle that day while drinking beer. The defendant drank his last beer about 4:00, approximately two hours before his intoximeter test. Later, Jim and Ronnie took the defendant's cycle for a test drive, while the defendant rode close by as a passenger on the back of Bruce's motorcycle. . . . The defendant testified that the four men — Jim and Ronnie on the defendant's cycle and Bruce and the defendant on Bruce's cycle — drove to Taylor Scrap Yard located on Highway 61 near the Paulding-Bartow County line. Jim and Bruce then drove on Bruce's cycle to look at another motorcycle in Rockmart, Georgia and left the defendant, Ronnie, and defendant's cycle at the scrap yard, where Ronnie wanted to look at an old pickup. The defendant testified that he remained at the scrap yard, because he felt certain that Jim and Bruce would return to pick them up. . . . The defendant stated Bruce and Jim did not return as the closing time of the scrap yard approached. The defendant stated that he and Ronnie pushed the cycle out of the scrap yard lot and pushed it to where Trooper Stowe later found it. The defendant and his nephew then began walking down Highway 61 with the stated intention of calling a relative in Paulding [County] to come pick them up. . . . The defendant testified that, because he and Ronnie were intoxicated, the men fell with the motorcycle as they pushed it. The defendant stated that he later fell down a bank on the side of the road and speculated that this fall occurred when Trooper Stowe passed by. . . . The defendant admitted that he was very intoxicated and that he did not have a valid driver's license. However, he denied driving his motorcycle at any time on March 20, 1992 and said that his friend Jim was the only person who drove it. . . . The defendant stated that he had not seen Ronnie in a long time and that he had recently learned that Ronnie was in jail in Atlanta. The defendant had not seen Jim and Bruce since March 20, 1992. The defendant testified that he thought Jim and Bruce were working somewhere in Florida. . . .

"Since Ronnie Jarrett was not present at trial, prior to opening arguments, counsel for the defendant made an oral motion in limine to exclude from evidence any statement made by Ronnie Jarrett to Trooper Stowe on the grounds of hearsay. The Court granted this motion. . . . As the trial began and Trooper Stowe was testifying, that Court clarified its ruling on defendant's motion in limine. The Court stated that any statement made by Ronnie Jarrett in the presence of the defendant would be admissible as an exception to the hearsay rule. The Court later overruled defendant's timely objection to Trooper Stowe's testimony concerning Ronnie Jarrett's statements. The defendant's objection was based upon defendant's belief that any statement made by Ronnie Jarrett was inadmissible hearsay, particularly since Ronnie Jarrett was not present at trial and was not available for cross-examination."

This appeal followed the denial of defendant's motion for new trial. *Held*:

In his sole enumeration, defendant contends the trial court erred in permitting Trooper Stowe's testimony regarding Ronnie Jarrett's on-the-scene utterance that defendant operated the motorcycle. Defendant argues that this testimony was inadmissible hearsay. This contention is without merit.

Trooper Stowe may testify as to what "he saw and heard while in the defendant's presence. See *Broome v. State*, 141 Ga. App. 538, 539, 540 (2) (233 SE2d 883); *Moore v. State*, 240 Ga. 210, 212 (2) (240 SE2d 68); *Grindle v. State*, 151 Ga. App. 164 (2) (259 SE2d 166)." *Henderson v. State*, 170 Ga. App. 482, 483 (317 SE2d 343). This holding is based on the rule that "a witness may testify as to what he saw and heard in the defendant's presence (*Reeves v. State*, 194 Ga. App. 539, 540 (391 SE2d 35)) even where the [out-of-court declarant] does not testify and is not available for cross-examination. . . . See *Reeves*, supra; *Sosebee v. State*, 190 Ga. App. 746, 750 (380 SE2d 464); *Chambers v. State*, 183 Ga. App. 874 (360 SE2d 438); *Green v. State*, 175 Ga. App. 849 (335 SE2d 4); *Latimore v. State*, 170 Ga. App. 848 (318 SE2d 722); *Henderson v. State*, 170 Ga. App. 482 (317 SE2d 343); see *Broome v. State*, [supra at 540]." *Hartley v. State*, 207 Ga. App. 683 (428 SE2d 683). The dissent states that *Faircloth v. State*, 253 Ga. 67 (316 SE2d 457), demands reconsideration of this evidentiary standard and recognizes that others have referred to this precept of Georgia law as "folklore." However, neither outside criticism of Georgia's law nor the holding in *Faircloth v. State*, 253 Ga. 67, supra, requires reversal of the long-standing rule that a witness may testify as to what he saw and heard in the defendant's presence.

In *Faircloth*, the trial court admitted a law enforcement officer's testimony regarding an out-of-court statement uttered by the victim (apparently in the defendant's presence) that the defendant had "hit

her several times and put a gun to her head." Id. at 68 (3), 69, supra. The Supreme Court noted that the victim's statement was uttered over a month before defendant killed the victim and concluded that the officer's testimony is hearsay.[1] However, the Supreme Court did not overturn the rule that a witness may testify as to what he saw and heard in the presence of the accused. The holding in *Faircloth* provided only that "any error in [the] admission [of hearsay] in this case would be harmless [since the hearsay] was cumulative of other evidence. . . ." *Faircloth v. State*, 253 Ga. 67, 68 (3), 69, supra.

"The ground of admission of the statement of a third person in the presence of the accused is that the omission to controvert the statement affords a basis for an inference of its truth. Such statement is admissible in evidence, to show that it calls for a reply, and to show the acquiescence of the accused." *Thomas v. State*, 143 Ga. 268, 269 (3) (84 SE 587). In the case sub judice, Trooper Stowe testified "that Ronnie Jarrett made [the] statement [that defendant had been driving the cycle] in the presence of the defendant and that the defendant made no direct response to it." Consequently, the trial court did not err in allowing the testimony as "an incriminating admission to be considered along with the other circumstances in inferring the guilt of the accused." *Thomas v. State*, 143 Ga. 268, 269 (3), supra. To say otherwise ignores recent authority affirming that a witness may testify as to what he saw and heard in the defendant's presence even where the out-of-court declarant does not testify and is not available for cross-examination. *Reeves v. State*, 194 Ga. App. 539 (1), 540, supra. Compare *Mallory v. State*, 261 Ga. 625 (409 SE2d 839), where the Supreme Court held that a comment on a defendant's silence or failure to come forward will not be allowed under the authority of OCGA § 24-3-36.

*Judgment affirmed. Birdsong, P. J., Beasley, P. J., Andrews and Johnson, JJ., concur. Pope, C. J., Cooper, Blackburn and Smith, JJ., dissent.*

BLACKBURN, Judge, dissenting.

I must respectfully dissent, as I believe that the arresting officer's testimony recounting the out-of-court statement of the defendant's nephew constituted inadmissible hearsay.

As noted by the majority opinion, this court has frequently held that a witness may testify as to what a third party said in the pres-

---

[1] The same conclusion cannot be reached as to Trooper Stowe's testimony that Ronnie Jarrett informed him that defendant "had been driving the cycle. . . ." This accusation was uttered immediately after commission of the crimes charged and was therefore so nearly connected to the criminal acts so as to be free from suspicion of device or afterthought. OCGA § 24-3-3; *Land v. McClure*, 135 Ga. App. 243, 244 (2) (217 SE2d 600).

ence of the defendant, even where the out-of-court declarant is unavailable at trial. *Broome v. State*, 141 Ga. App. 538 (233 SE2d 883) (1977); *Henderson v. State*, 170 Ga. App. 482 (317 SE2d 343) (1984), and cases cited therein. However, the Supreme Court has since disapproved of that rule. See *Faircloth v. State*, 253 Ga. 67 (316 SE2d 457) (1984).

In *Faircloth*, the Supreme Court acknowledged the modern trend of admitting out-of-court statements where the declarant is present at trial and available for cross-examination, but considered such testimony inadmissible hearsay where the declarant is unavailable at trial. In so concluding, the court emphasized that it is the out-of-court declarant whose veracity is at issue, and where the actual declarant is unavailable at trial, the defendant's right of confrontation is inadequately protected by cross-examination of the witness who recounts the out-of-court statements.

The legal basis for this court's past treatment of such out-of-court declarations as non-hearsay, i.e., that any declaration made in the presence of an accused is admissible, has been criticized as a "folklore," and "not even good folklore" at that. Agnor's Ga. Evid. (2nd ed.), § 11-9, p. 336. Such criticism may not require this court's reconsideration of the issue, but the Supreme Court's decision in *Faircloth* demands it.

Unlike *Faircloth*, where any error in the admission of the hearsay was rendered harmless by other, admissible evidence regarding the matter, the nephew's out-of-court declaration establishing the defendant as the operator of the motorcycle was the strongest, if not only, evidence on that point and was critical to the instant case. Under these circumstances, the erroneous admission of the nephew's declaration cannot be regarded as harmless, and the defendant's conviction should be reversed.

I am authorized to state that Chief Judge Pope, Judge Cooper and Judge Smith concur in this dissent.

DECIDED JANUARY 11, 1994 —
RECONSIDERATION DENIED MARCH 11, 1994 —

*Thomas N. Brunt*, for appellant.
*T. Joseph Campbell, District Attorney, Mickey R. Thacker, Assistant District Attorney*, for appellee.