JAMES NEWMAN, Sen'r, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

New trial granted because verdict contrary to evidence. When evidence is entirely circumstantial, it ought to connect the defendant with the criminal act.

Simple larceny, in Richmond Superior Court. Tried before Judge HOLT, at November Term, 1858.

James Newman, Senior, and Wade Newman, were indicted for hog stealing. The defendants severed, and James Newman, Senior, was put upon his trial.

At the conclusion of the testimony, the case was argued before the jury, who brought in a verdict of guilty with a recommendation to mercy.

The defendant being dissatisfied with the verdict of the jury, moved the Court for a new trial, upon the following ground: " That the verdict of the jury was contrary to law and evidence and the charge of the Court," which motion the Court refused. To which refusal to grant a new trial the defendant excepted, and assigns the same for error.

MILLERS & JACKSON, for plaintiff in error.

Attorney General McLAWS, contra.

*By the Court.*—McDONALD J. delivering the opinion.

The defendant was presented by the grand jury of Richmond county for the offence of simple larceny. Stealing hogs was the charge. He was tried and convicted. He moved for a new trial, on the ground that the verdict of the jury was contrary to law, evidence and the charge of the Court. The Court refused the motion and the defendant excepted. We are not disposed to interfere with the verdict of a jury in a criminal cause, especially when we have the

evidence that the Judge who tried it, is satisfied with the verdict, which is to be implied from his refusing to grant a new trial. Nevertheless, if from a full consideration of the case we are decidedly of opinion that a conviction is not warranted by the evidence, it becomes our duty to interpose and order a new trial. The conviction in this case was entirely on circumstantial evidence. We have no doubt that the evidence establishes that the crime was committed by some one, but it is far from being free from doubt that it was committed by this plaintiff in error.

The hogs charged to have been stolen, must have been killed in the day time, for they were killed at least a mile from the owner's residence, and they were in the habit of going home to sleep at night, and it was by their failure to return home on Monday night, that the owner was led to believe that they had been stolen. The defendant's residence was five or six miles from that of the owner of the hogs. There is no evidence to connect the defendant with the killing of the hogs. There is no doubt but they were hauled from the place at which they were killed, in the cart of the defendant. The track of the cart was traced, the day after, from the place at which the hogs were killed, to a drain at the end of the lane of Newman, the defendant, by Martin, who owned the hogs, and a man by the name of Simmons. It was about one hundred yards to the house of defendant. On the next day, James D. Green followed the cart track from the end of the lane to the place at which, there is no doubt, the hogs were killed. He followed the track back into the defendant's lane. He also measured the horse's track, and found that it suited the foot of defendant's horse. He found another track which led into Mr. Newman's yard, between the time he had been there and his return. This track, I suppose the witness means, had been made during his absence. This is the only track that any of the witnesses traced into James Newman's yard. The track followed from the place where the hogs were killed was not

followed into the lane, and it does not seem that it could not have been traced, if it had been driven through the lane to the house. What became of it does not appear. Whether it was driven through the woods, where its track could not be seen, is not stated; or whether it might have passed around; or whether it might have been driven into the woods and concealed, is all left to conjecture. The record shows no trace of the cart track into the defendant's yard, except the newly made one followed by the witness, Green, which was followed by him through the yard, to a house some distance off. This witness, after passing round the yard and riding the road beyond, put paper in the horse track, but does not say whether or not it corresponded with the measure previously taken. The track went into Henry Newman's gate, and turned and came back. On his return, he found the cart in James Newman's yard.

The defendant manifested great anxiety to settle the case, and paid Martin fifty dollars for the hogs. He all the time protested his innocence, saying the circumstances closely connected his family with it. It is true, his protestations of innocence were entitled to little weight, but that his family were implicated, if true, was quite a sufficient reason for the anxiety he manifested to settle the case, and his pertinacious efforts to settle it, after his having been repeatedly cautioned, are not, to our mind, evidence of guilt, but, on the contrary, they show great determination to settle a matter which, if prosecuted, might result in the conviction of a member or members of his family. These were all the circumstances which point to the guilt of this defendant. They are consistent with his perfect innocence. The horse and cart might have been used with or without his consent. If the latter, no blame could be imputed to him. If he loaned it without knowing the use to which it was to be applied, that cannot connect him with the transaction. The stolen property was not found on his premises; the track of the cart was not traced there, except as it passed through the yard to the

house of another person. There is no evidence that it stopped near the door of his house, kitchen or smoke-house. Indeed, Mr. Martin seems to have been more desirous to get pay for his hogs, than to find an offender. Why did he not have this old man's premises searched ? Why did he not enter the yard and enquire for the cart, when he could not trace its track beyond the drain of water at the end of the lane? He refused to take pay from the defendant at first, because he said he knew nothing about the law, and might do wrong; but when fifty dollars was offered, he accepted it. With all the circumstances before him, he never did accuse this defendant; and what the conviction of those was, who had the facts before them, may be inferred from the remark of Mr. Green, who was a disinterested witness. He told the defendant if he had any money to spare, he had better give it to his boys to move away, or defend a law suit.

But there was evidence on the part of the defendant. The witnesses were his children, who testified that he was at home the night the hogs were said to have been stolen. One of them names Tuesday night, which was a mistake as to the day. They say their father was at home that night, and went to bed between eight and nine o'clock, and was called up when Mr. Day came there, between nine and ten o'clock. Mr. Day was called on the part of the State, who deposed that it was between ten and eleven o'clock that he went to the house of defendant on that night. If defendant had gone to bed, he dressed very soon. He came out in a minute after he was called by the females. The same witness testifies it was five minutes from the first call to the appearance of the defendant. This witness corroborates the family witnesses in the important fact that the defendant was at home on that night, at a late hour.

Mr. Bealle, who was with Day, testifies that it was about five minutes from the call to the appearance of the defendant. If he had gone to bed, he had time to dress.

One of the daughters testifies that her father had been cutting a pine in an old field, as a reason why he went to bed so early.    This shows he was at home and at work, at least a part of the day on which the hogs were killed.

We think that the evidence in this case establishes the facts that Martin's hogs were stolen and killed, and hauled away in the cart of the defendant, drawn by his horse, and that he showed great anxiety to have the case settled, but we think there is an absence of proof to connect him personally with the larceny.    As we have said, his anxiety to settle the case can be accounted for on a hypothesis entirely consistent with his innocence.    He had no part of the stolen property; the cart was not traced to his house; or, if it was, it passed through the yard directly to the house of another, whose gate it entered; it may have passed through his yard unknown to him, at night; he may have loaned the cart without a knowledge of the use to which it was to be appropriated, or it may have been taken without leave.    If there had been a part of the property found on him; if he had been seen with the cart; if it had been driven to his yard and stopped, not passing beyond, we should not have felt authorized to interfere with the verdict of the jury; but believing as we do, that if he be guilty, the evidence adduced against him in this record, does not prove him so, we award him a new trial.

Juries are generally too reluctant to convict on circumstantial evidence.    While it is true that a man ought not to be punished for an offence of which he is guiltless, the jury ought not to pronounce the accused innocent, for the want of positive evidence of his guilt.    Circumstances satisfactorily proven, which point to his guilt, and which are irreconcilable with the hypothesis of his innocence, or which require explanation from him, and may be explained by him, if he be innocent, but which are not so explained, ought to satisfy the conscience of every juror, and justify him before that forum, for rendering a verdict according to their almost uner-

ring indications. Any other rule will expose society to the ravages of the most depraved men. The most atrocious crimes are contrived in secret, and are perpetrated, generally, under circumstances which preclude the adduction of positive proof of the guilt of the persons who commit them. But it must be remembered, that while this is the case, circumstances which would authorize a bare *conjecture* of guilt, are not sufficient to warrant a conviction.

Judgment reversed.