## BARROW *vs.* THE STATE OF GEORGIA.

80 191
88 361

80 191
96 302

80 191
f10? 682

1. A new trial will not be granted on account of newly-discovered evidence which is simply of an impeaching character; nor on account of alleged newly-discovered evidence of any kind, when movant's counsel file no affidavit of their ignorance, before the verdict, of the existence of such evidence.

2. When, during the trial of a criminal case, a juror separates himself a short while from his fellows, and the court, before the trial progresses further, requires him to explain his absence, which he does satisfactorily, and no objection is then made to the sufficiency of this purgation; and when it also affirmatively appears, by the affidavits of the juror and other persons not members of the jury, that his separation from the other jurors did defendant no harm, a conviction will not be set aside on this ground.

3. That the court failed to give in charge, specially, the law as to circumstantial evidence, there being no request to this effect, constitutes no ground for a new trial, when it appears that the court did very fully, and liberally to the defendant, instruct the jury as to the law of reasonable doubts, and the amount and character of testimony necessary to warrant a conviction.

4. A witness, in describing a fight, fixed the time at which he became aware of a certain occurrence therein by saying, " I did not know it until D. said he knew M. had a knife," the remark of D., mentioned by the witness, having been made then and there, while the fight progressed :

*Held*, that this remark was properly admitted in evidence, 1st, because, in repeating it, the witness simply used his own way of designating when he learned the fact he had stated; and 2d, because it was a part of the *res gestæ.*

February 6, 1888.

New trial. Evidence. Criminal law. Jury and jurors. Charge of court. Practice in superior court. Witness. *Res gestæ.* Before Judge SIMMONS. Houston superior court. April term, 1887.

Mattie Barrow was indicted for murder, and was found guilty of voluntary manslaughter. Her motion for a new trial contained, among others, the following grounds :

(1) Because of newly-discovered evidence. (The effect

---

*SIMMONS, J., being disqualified, Judge LUMPKIN, of the Northern circuit, was appointed to preside in his stead.

of this was to contradict or impeach witnesses for the State. The only affidavit as to diligence in its procurement, and as to ignorance of it, was made by defendant herself.)

(2) Because of the separation of one of the jurors from the others while absent from the court-room in charge of the bailiff. (The facts as to this ground are stated in the second division of the decision.)

(3) The court erred in charging the law in cases of direct testimony as applicable to this case, and in not charging as to circumstantial evidence; the evidence as to who gave the fatal stab being entirely circumstantial.

(4) The court erred in not ruling out before the jury the answer to the following question: "Was Lucy cut before or after you threw Marietta into the embrace of Molly Scott?" Answer: "I couldn't tell; I didn't know it until John Dunn said he knew Mattie had the knife." At first an objection to this was sustained, but it was subsequently admitted as part of the *res gestæ.*

The motion was overruled, and the defendant excepted. For the other facts see the decision.

M. G. BAYNE and A. S. GILES, by brief, for plaintiff in error.

J. L. HARDEMAN, solicitor-general, for the State.

LUMPKIN, Judge.

1. This court has so repeatedly ruled that newly-discovered evidence, the effect of which is merely to impeach a witness who has testified at the trial, is no ground for a new trial, and that alleged newly-discovered evidence will not be considered at all unless the counsel for movant, as well as the latter, will swear they did not know of its existence till after the verdict, it is quite sufficient to mention these rulings, if indeed that be necesessary, without discussing them.

2. It appeared that during the trial of this case, the judge allowed the jury, attended by their bailiff, to leave the court-room for a necessary purpose. They soon returned, with one of their number missing, who came in within a few minutes. The court immediately inquired of the juror where he had been and the cause of his absence. He explained that he had gone to his stable to attend a call of nature. The court then asked him if he had spoken to anybody or anybody had spoken to him about the case, to which he replied in the negative. Defendant and his counsel were present and said nothing, and the trial thereupon proceeded. On the hearing of the motion for a new trial, it further appeared, by the affidavits of this juror and other persons not members of the jury, that while separated from his fellows he did not hear any one express any opinion in relation to the case, or make any remark about the case, except that one Martin asked the juror if the case was closed, to which he said "no"; and the juror further swore that during the separation no act, word or sign reached him, by which he was affected or influenced in his duty as a juror trying the case.

While the rule is, that the separation of a juror from the other members during the trial, unattended by an officer, raises a presumption of injury to the defendant, and the burden is on the State to overcome it, the State has successfully done so in this case, especially when the defendant had an opportunity, while the court was purging the juror, to make any desired objection to the same for want of sufficiency or completeness, and did not avail herself of it.

3. The testimony in this case is voluminous. It is unnecessary to discuss it in detail, because it amply authorized a verdict for voluntary manslaughter. It is perhaps proper to remark that it is not clear that the testimony was entirely circumstantial. While no witness actually saw the defendant stab the deceased, several witnesses saw them fighting, giving each other violent blows, and

when the fight ended, deceased was found with a mortal stab in her breast, blood upon her garments, and very soon died. But on the assumption that it was a case in which it would have been proper to instruct the jury specifically as to the law of circumstantial evidence, we are of the opinion that, in the absence of such a request, the court did substantially give the jury all necesssary instructions as to the amount and character of proof required to justify a conviction. He charged fully the law of reasonable doubt; warned the jury not to convict unless morally satisfied of her guilt; impressed this upon them by repeated statements to this effect; informed them that if, after an honest and impartial investigation, they were uncertain as to her guilt, they ought to acquit; instructed them they had the right to believe her statement in preference to the sworn testimony offered by the State; and concluded by saying, she entered the trial with the presumption of innocence in her favor, that this presumption remained until the State rebutted it by proof, and that if the State had failed to do so she should be acquitted.

4. A witness was asked when the deceased was cut, and replied, " I couldn't tell; I didn't know it until John Dunn said he knew Mattie had the knife." What John Dunn said, as related by this witness, was objected to. It appeared, however, that this remark by John Dunn was made while the fight was going on between the defendant and deceased. The witness fixed the time when he became aware of the cutting by saying, it was after he heard this remark. The making of it was an occurrence which took place during the fight, and it designated the point at which the witness found out that the cutting had been done. Besides, it is clearly admissible as a part of the *res gestæ*, and there was no error in refusing to rule it out.

Judgment affirmed.