## A93A2103. KELLY v. THE STATE.
(442 SE2d 462)

ANDREWS, Judge.

Stanley Kelly was indicted on February 24, 1992 for the armed robbery of Annette Barber on December 21, 1991; the armed robbery of Yun Chae Yi on October 5, 1991; the robbery of Eugene Argo on December 14, 1991; and the robbery of Sanh Tran on October 5, 1991. Kelly's brother, Curtis Phillips, was listed as a co-defendant in Count 1.

Kelly was tried before a jury on Count 1, for armed robbery, and Count 4, for robbery. He was found guilty of the armed robbery charge and acquitted of the robbery charge.

At trial, regarding the crime against Ms. Barber, Officer Athis of the Avondale Police Department testified that he received a call with

reference to an armed robbery on the evening of December 21, 1991. Thereafter, he followed a burgundy Pontiac, which was occupied by three men, which matched the one identified as stolen, into the parking lot of a restaurant. Another police vehicle arrived at the business lot and the Pontiac collided with that vehicle. One of the men in the Pontiac got out of the car and held a gun on Officer Athis. Then, the gunman and another man from the Pontiac ran off. A third man, who had remained in the vehicle, was apprehended. Handguns and Ms. Barber's purse were found in the vehicle.

Detective Bumgardner of the DeKalb County Police Department testified. He stated that the man who remained in the vehicle after the first two men fled was Mr. Phillips, Kelly's brother. The detective testified that Kelly eventually turned himself in to the police.

Detective Bumgardner stated that on December 3, 1992, Kelly was read his rights and then gave a statement. Bumgardner stated that Kelly's statement recounted that he, his brother and another man approached the victim as she was getting out of her car. Kelly's statement conceded that he pointed his gun at the woman, but stated that "he didn't pull the trigger."

Ms. Barber also testified at trial. She stated that on December 21, 1991, she saw three men in an apartment parking lot in which she intended to park. After she parked her car, the men ran up to her, and one of them put a gun to her side and demanded her money. She was then forced to the ground and a gun was held to her head. The man told her to drop her keys and purse. She heard scrambling and then the men drove off in her car.

The defense called several witnesses including Kelly. He admitted taking Ms. Barber's keys, purse and car. He denied pulling a gun, or even seeing a gun pulled on Ms. Barber. Curtis Phillips corroborated Kelly's testimony.

1. In his first enumeration of error, Kelly claims that the trial court erred in allowing an in-court identification of him by Ms. Barber after she viewed an impermissibly suggestive line-up. Kelly's argument is based on the fact that a picture of one of his brothers, who was not involved in the instant case, was stapled to the inside of the police file folder which was used during the photographic line-up.

At a hearing outside the presence of the jury, DeKalb County Police Detective Bumgardner testified that approximately two weeks after the crime, a photographic line-up was conducted. He stated that he laid his file upside down on his desk and went out of the room. Ms. Barber saw the photograph stapled to the file before she identified the perpetrator of the crime. The detective testified that Kelly did not resemble the brother whose photograph was attached to the file folder.

Detective Bumgardner testified that the photographic line-up

was composed of six pictures. Ms. Barber picked photograph #3, a photograph of someone who is not associated with this case; and photograph #5, which was of Kelly. She told the detective that she chose #3 because he resembled the photograph in the folder. She reported that she chose #5, because he resembled one of the men who robbed her, specifically the one who held a gun to her head.

Ms. Barber testified that the area of the robbery was well lit and that she was able to get a good look at the man who held the gun to her head. She said that while she was held to the ground, she was able to see the robber's face and that she remembered the shape of his nose and of his face. She recalled that when the police arrived, she gave a description of the robber.

Her testimony regarding her choices from the line-up was somewhat equivocal. First she recalled that her identification of the man pictured in photograph #3 was based solely on the picture she had seen in the folder. She later stated that the man from photograph #3 also looked like the man involved in the robbery. She consistently testified that her identification of the man in photograph #5, which was Kelly, was based on the fact that he looked like the man who robbed her. Because of the unclear nature of the victim's testimony, the court ruled that it would not allow evidence of the photographic array and the identification by the victim.

A later hearing was conducted concerning the admission of an independent in-court identification. Ms. Barber testified again outside the presence of the jury. She stated that she based her identification of Kelly on having seen him at the time of the robbery and that his face was the one she remembered from the date of the robbery. She stated that the area was well lit and that she had ample opportunity to observe his face. She stated more clearly that she had identified #3 and #5 as two separate individuals — and that Kelly was the one she recalled from the robbery. She stated that the photograph she observed in the police file had no bearing on her identification of Kelly.

Thereafter, the court found that Ms. Barber's identification was based upon her view of him at the crime and that there was no resemblance between the two photographs. The court also found that there were no improper influences on her identification. Accordingly, the court permitted her to testify in court and she identified Kelly as her assailant. On cross-examination, the defense questioned her regarding the photographic identification.

"Whether a subsequent in-court identification is tainted depends on all the circumstances of the case. Conviction based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (Citations and punctuation

omitted.) *Daniels v. State*, 207 Ga. App. 689, 691 (4) (428 SE2d 820) (1993). The identification procedure here was not impermissibly suggestive in that the trial court found that the photograph attached to the file folder did not resemble Kelly and Ms. Barber's identification of the photograph of Kelly was not related to her having seen the photograph in the file. Although Ms. Barber's initial testimony was confusing, her later testimony made it clear that the photograph she saw was unrelated to her identification of Kelly. The photograph she saw influenced her choice of photograph #3 in the line-up, a person unconnected to the case.

Assuming arguendo that the photographic identification procedure here was impermissibly suggestive, there was not a substantial likelihood of irreparable misidentification. The second prong of this test considers: "(1) opportunity of the victims to view the perpetrator at the time of the crime; (2) the victims' degree of attention; (3) the accuracy of their prior descriptions of the perpetrator; (4) the level of certainty of their identifications; and (5) the length of time between the crime and the confrontation." *Banks v. State*, 203 Ga. App. 355, 356 (416 SE2d 866) (1992).

Here, Ms. Barber testified that she was able to observe Kelly at the time of the crime and that she focused on him so that she would be able to identify him later. She remembered details of his appearance. She based her in-court identification of him on her view of him during the crime, not on the photographic line-up. She identified Kelly within two weeks of the crime and appeared certain that Kelly was the perpetrator of the crime. We do not find a substantial likelihood of irreparable misidentification and the trial court did not err. See also *Jacobs v. State*, 207 Ga. App. 714 (1) (429 SE2d 256) (1993); *Johnson v. State*, 169 Ga. App. 943 (1) (315 SE2d 667) (1984).

2. In his second enumeration of error, Kelly argues that the trial court erred in failing to instruct the jury as to the "two theories" charge upon request since it was demanded by the evidence. The charge that he requested stated: "where all the facts and circumstances of the case and all reasonable deductions from it present two equal theories, one of guilt and the other of innocence, then the jury must acquit the accused."

Kelly's enumeration is without merit. *Moss v. State*, 209 Ga. App. 293, 295 (433 SE2d 397) (1993). We are mindful that "where the state's case depends, in whole or in part, on circumstantial evidence, a charge on the law of circumstantial evidence must be given on request. This rule will apply whether or not the jury is authorized to find that the direct evidence presented by witness testimony has been impeached." *Robinson v. State*, 261 Ga. 698, 699-700 (410 SE2d 116) (1991); see also *Postell v. State*, 261 Ga. 842 (412 SE2d 831) (1992). The charge which Robinson requires upon request is that which

guides the jury on the "quantum of circumstantial evidence which will authorize a conviction." *Robinson*, supra at 699. We interpret *Robinson* as requiring, upon request in appropriate cases, a charge pursuant to OCGA § 24-4-6. Although the language of the charge may vary from the statutory language, OCGA § 24-4-6 states: "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." See Suggested Pattern Jury Instructions, Criminal Cases (2d ed.), p. 12, item J2. Kelly requested no such charge in this case. See generally *Manning v. State*, 207 Ga. App. 181 (2) (427 SE2d 521) (1993). *Robinson* does not require that the "two theories" charge which was requested here be given. See *Moss*, supra; *Langston v. State*, 208 Ga. App. 175 (430 SE2d 365) (1993). Moreover, Kelly's request for the "two theories" charge did not constitute a request for a charge on circumstantial evidence pursuant to *Robinson*.

To the extent that our decision in *Lowe v. State*, 208 Ga. App. 49, 53 (3) (430 SE2d 169) (1993) might be read to suggest a different result, it is disapproved.

3. Finally, Kelly contends that the court erred in failing to charge the jury regarding a witness testifying under a promise of leniency. It does not appear that this charge was adjusted to the facts of this case and we find this enumeration without merit.

*Judgment affirmed. Pope, C. J., McMurray, P. J., Birdsong, P. J., Beasley, P. J., Cooper, Johnson, Blackburn and Smith, JJ., concur.*

DECIDED MARCH 4, 1994.

*William T. Hankins III*, for appellant.

*J. Tom Morgan, District Attorney, Elisabeth G. Macnamara, Barbara B. Conroy, Assistant District Attorneys*, for appellee.