## A93A0794. ROURA v. THE STATE.
(447 SE2d 52)

BEASLEY, Presiding Judge.

A combined decision in this appeal of Alcibiades Roura and in the appeal of appellant's co-defendant, his brother Humberto Roura (Case No. A93A0795), was originally issued on July 13, 1993. On reconsideration of the two cases, the court denied the motion of Humberto, but substituted an opinion on July 30, and the remittitur in his case was issued on October 22. In the case of Alcibiades, there arose an equal division of the judges, one judge not participating. The judgment in the combined decision of July 13 was vacated, a new opinion was issued on July 30, and insofar as it related to Alcibiades, Case No. A93A0794 was transferred to the Supreme Court of Georgia in accordance with the Georgia Constitution, Art. VI, Sec. V, Par. V. That Court remanded the case to this court to render a decision when the full court was present.

1. We adopt the opinion set out in the new opinion of July 30, with respect to Alcibiades Roura, except as to Division 2.

First, though, with respect to Division 1 regarding the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), we confirm that the evidence against Alcibiades was sufficient to prove he was a party to the crimes of trafficking in cocaine and possession of cocaine with intent to distribute. He drove his brother Humberto's car to the gas station after Humberto called his home to arrange for the preparation and delivery of the cocaine for the transaction. He was driving the car when the phone call was made en route to inquire about progress. He went into the station when the cocaine package was carried in by his passenger, their nephew, and put on top of a bureau. He went out again to move the car when asked by Carballo, because it was impeding the transaction. Carballo handed the package of cocaine to Arrugueta because Humberto did not want to do it. Alcibiades was standing with his brother Humberto while the exchange between Carballo and Arrugueta took place and immediately thereafter, until the police arrived a few minutes later.

2. With respect to Division 2, further developments and study since the opinion of July 30 convince us that, like Humberto, Alcibiades is not entitled to a new trial. Alcibiades, as did Humberto, asserts that the court erred in failing to give two charges on circumstantial evidence. It refused to charge the rule found in OCGA § 24-4-6, which defendants requested verbatim, that "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consis-

tent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." The court also rejected what is known as the "two theories" charge. Defendants quoted the version found in *Johnson v. State*, 159 Ga. App. 497, 499-500 (283 SE2d 711) (1981).

In the charge conference, the court rejected the first after a debate about whether there was any direct evidence involving Alcibiades, it being implicitly conceded that there was direct evidence against Humberto. Defense counsel acknowledged that there was direct evidence that Alcibiades drove the car which transported the cocaine when it was summoned and that he moved that car, which witness Carballo testified was impeding the transaction, and that he was present at the scene. Carballo testified that the car which Alcibiades drove was Humberto's and that both he and the passenger, a nephew, came into the gas station with the package of cocaine. The package was put on top of a bureau, from which it was taken a few minutes later and given to Arrugueta.

The court did instruct the jury that there were two kinds of evidence, direct and circumstantial, and it charged on the definitions of the two and the distinction between them. In addition it charged on the presumption of innocence, the necessity for the State to prove every material allegation and every essential element beyond a reasonable doubt, and the definition of a reasonable doubt. It charged that such a doubt is one that a fair-minded, impartial juror, who is honestly seeking the truth, would have, based on common sense and reason, after considering all the evidence, the lack thereof, and the conflict in it. It described such a doubt as being what is present when a mind is wavering, unsettled, or unsatisfied.

After the jury was charged, the court asked if there were any objections. Counsel for defendants responded, "No objections, Your Honor."

New counsel filed a motion for new trial but did not reference the omission of either of the charges as a ground.[1] Trial counsel wrote to the court following the trial and asked to be relieved of representing defendants on appeal. He stated that he knew of no grounds upon which an appeal would likely succeed.

(a) The omission of the two charges was waived. As held in *Jackson v. State*, 246 Ga. 459, 460 (271 SE2d 855) (1980), defense counsel waived the right to raise the issue on appeal "by stating he had no objection to the charge." He did not avoid waiver, which *Jackson* prescribes may be done, by stating the objections in response to the

---

[1] In a later, out-of-time pro se motion for new trial, Alcibiades did not reference it either.

court's inquiry or following "the procedure . . . of reserving the right to object on motion for new trial or on appeal."

This is an exception to "[t]he general rule . . . that defendants in criminal cases are not required to except to the jury charge to preserve error for appeal. [OCGA § 5-5-24 (a).]" *Rivers v. State*, 250 Ga. 288, 309 (7) (298 SE2d 10) (1982). As stated in *Rivers,* "[w]here objections are requested, the failure to either object or to reserve the right to later object amounts to a procedural default barring appellate review of the charge." Id. at 309. This is true even under the Unified Appeal Procedure and where certain jury instructions were cast in terms of presumptions, a repeatedly disapproved practice, which was the case in *Rivers.*

This procedural rule has been followed in numerous cases. See, e.g., *Fraley v. State*, 256 Ga. 178, 179 (1) (345 SE2d 590) (1986); *Henderson v. State*, 182 Ga. App. 513, 518 (3) (356 SE2d 241) (1987); *Taylor v. State*, 174 Ga. App. 323 (1) (329 SE2d 625) (1985). The opinion in *Allen v. State*, 177 Ga. App. 600, 603 (340 SE2d 246) (1986), refers to the declination of an express, court-issued invitation to object as being "the clearest example of waiver." Id. at 603.

The rule has been applied where, as here, the court rejects requests to charge. *Wilson v. State*, 259 Ga. 55, 58 (6) (376 SE2d 676) (1989); *Seidel v. State*, 197 Ga. App. 14, 15 (2) (397 SE2d 480) (1990); *Spivey v. State*, 193 Ga. App. 127, 131 (3) (386 SE2d 868) (1989). That stands to reason because, after a request is rejected without exception and after the whole charge is actually given and counsel affirmatively indicates no objection to it, there is nothing to preserve the point. This is not waiver by mere silence but rather waiver by active expression. The trial court is given to understand, at a time when there is opportunity to correct any error in the charge, that defendants are satisfied to have the case submitted to the jury for its deliberations on the instructions as given. Thus, invoking the right to request certain instructions in writing, as authorized in OCGA § 5-5-24 (b), does not avoid the waiver which occurs when, after the whole charge is given, express acceptance of it is stated.

It is not a mere technical rule but rather a means to avoid reversible error and so to promote the sound administration of justice by the achievement of a fair trial the first time. Here, then, there was a waiver because counsel did not object or state that the right to object in a motion for new trial or appeal was reserved. *White v. State*, 243 Ga. 250, 251 (253 SE2d 694) (1979).

(b) Alcibiades contends, as did Humberto, that even if they waived the omission, it is reviewable because it was "a substantial error . . . which was harmful as a matter of law." OCGA § 5-5-24 (c). What this has been construed to mean is that an omission "fails to provide the jury with the proper guidelines for determining guilt or

innocence." *Spear v. State*, 230 Ga. 74, 75 (1) (195 SE2d 397) (1973). The erroneous charge must be blatantly apparent and prejudicial to the extent that it raises a question whether the defendant has been deprived, to some extent, of a fair trial. *Maynard v. State*, 171 Ga. App. 605, 606 (2) (320 SE2d 806) (1984); *Ancrum v. State*, 197 Ga. App. 819, 820 (2) (399 SE2d 574) (1990) (failure to instruct on the law of possession, an essential element of the offenses, was error); *Gaines v. State*, 177 Ga. App. 795, 800 (1) (341 SE2d 252) (1986) ("the nature of the charge possibly authorized a conviction for a crime not charged [and] [t]hus . . . the error is of such an egregious nature as to invoke . . . OCGA § 5-5-24 (c)"); *Phelps v. State*, 192 Ga. App. 193, 195 (384 SE2d 260) (1989) ("[s]ubstantial errors in the charge on the essential elements are usually harmful as a matter of law so as to invoke OCGA § 5-5-24 (c). [Cit.]") In *Barnett v. State*, 178 Ga. App. 685 (1) (344 SE2d 665) (1986), the trial court's failure to instruct the jury to disregard the testimony of appellant's general character or conduct in other transactions was a "blatantly apparent" and "highly prejudicial" error which, this court concluded, deprived defendant of his right to a fair trial.

Rejection of the charges here does not require reversal in this case.

(1) The "two theories" charge is not one the absence of which deprives a defendant of a fair trial. In fact, it has been criticized often and severely in that it may confuse or mislead the jury. *Johnson v. State*, 210 Ga. App. 99, 102 (2) (435 SE2d 458) (1993); *Langston v. State*, 208 Ga. App. 175 (430 SE2d 365) (1993). See also *Burris v. State*, 204 Ga. App. 806, 810 (3) (420 SE2d 582) (1992); *Johnson v. State*, 209 Ga. App. 632, 634 (4) (434 SE2d 169) (1993) (non-precedential). In *Kelly v. State*, 212 Ga. App. 278 (442 SE2d 462) (1994), the failure to give the "two theories" charge, as requested, was not held to be reversible error. The charge, which the Supreme Court recites is "based on *Patrick v. State*, 75 Ga. App. 687 (44 SE2d 297) (1947)," is, according to it, "appropriate only when *all* of the evidence is circumstantial. [Cit.]" *General v. State*, 256 Ga. 393, 394 (3) (349 SE2d 701) (1986). Note that the Court said it was "appropriate," not that it is "required." It is a charge derived from *Davis v. State*, 13 Ga. App. 142 (1) (78 SE 866) (1913), where, as in *Patrick*, the appellate court was using the concept as a measure in *its* considerations of the sufficiency of the evidence to support the verdict and using this rule as a standard of review.

*Davis* was a case in which the defendant presented his version of the event and his explanation of his involvement, which comported with innocence. The court asked itself: "Does the evidence exclude every reasonable hypothesis save that of the guilt of the accused? Under this evidence [summarized earlier in the case] it is just as rea-

sonable to infer that the accused was agent of the purchaser [of liquor, as he stated] as that he was agent of the seller; and it is well settled that where two theories are presented by the facts in evidence, — one of guilt and one of innocence, — the jury should accept the one which is consistent with innocence, rather than that of guilt." Id. at 143. In reviewing the evidence, the court was of the opinion that it left "entirely too much for conjecture." It "[did] not feel justified in permitting a verdict to stand which rests solely upon a bare suspicion of guilt, and which presents a theory as consistent with innocence as with guilt." It held, therefore, that the verdict was without any evidence to support it. Id. at 144.

As in *Davis*, likewise in *Patrick*, the defendant had presented evidence in support of a theory of innocence. The appellate court reviewed "the facts in evidence and all reasonable deductions therefrom" and concluded that it presented "two theories, one of guilt and the other consistent with innocence." That being the case, the court held that "the justice and humanity of the law compel the acceptance of the theory which is consistent with innocence," citing *Davis* and the concept which had become codified as a rule of law, and reversed the judgment "on the general grounds." *Patrick*, supra at 691. It said, in effect, that the evidence did not support a finding of guilt beyond a reasonable doubt. At the least, a reasonable doubt was created by a theory of innocence offered by defendant and supported by evidence. What started out as an appellate rule to test the sufficiency of the evidence to support the jury's verdict, became in time a jury charge. For more of its history, see *Langston*, supra.

Even if the evidence in this case were entirely circumstantial as to each defendant, and even if either presented a theory consistent with innocence, the absence of the "two theories" charge did not deprive either defendant of a fair trial, particularly in view of the other instructions given to the jury.

(2) The failure to charge the principle contained in OCGA § 24-4-6 also did not constitute such an omission that Alcibiades (or Humberto) was deprived of a fair trial. Of course, it is not merely a different version of the "two theories" charge. *Langston*, supra; *Moss v. State*, 209 Ga. App. 293, 294 (433 SE2d 397) (1993); *Kelly*, supra; *Burris*, supra. It does, however, stem from the same conceptual root, as it involves a comparison of conflicting versions of an incident.

Preliminarily, we assume that this is the principle involved in *Robinson v. State*, 261 Ga. 698 (410 SE2d 116) (1991). *What* circumstantial evidence charge *Robinson* requires is somewhat unclear. As pointed out in *McGuire v. State*, 209 Ga. App. 813, 816 (434 SE2d 802) (1993) (Beasley, P. J., concurring in part and dissenting in part), the Supreme Court merely stated that "a" charge on the law of circumstantial evidence must be given, and the charge requested by

Robinson is not set out in the opinion. The problem which this writer saw in McGuire's charge is that it referred to *all* of the evidence as being circumstantial, when in fact there was substantial direct evidence as well. Refusing to give a charge which is not adjusted to the evidence is not error. *Berry v. State*, 262 Ga. 614, 615 (4) (422 SE2d 861) (1992); *Hill v. State*, 259 Ga. 557, 558 (3b) (385 SE2d 404) (1989); *Harris v. State*, 202 Ga. App. 618, 620 (4c) (414 SE2d 919) (1992). We have, in at least several instances since *Robinson*, assumed that the Supreme Court was addressing the principle in OCGA § 24-4-6, at least. That is, that the definitions of direct and circumstantial evidence (i.e., OCGA § 24-1-1 (3); (4)) would not be enough, and that the "two theories" charge, even if the court meant to include such a charge, would not be enough. See *Manning v. State*, 207 Ga. App. 181, 182 (2) (427 SE2d 521) (1993), where the court charged the definitions but not "the law of circumstantial evidence." See also *Burris*, supra, which seems to assume it.[2]

If, then, a charge on OCGA § 24-4-6 were regarded as so fundamental, the Supreme Court in *Robinson* would not have conditioned the right to have it charged on the making of a request. It held that "where the state's case depends, in whole or in part, on circumstantial evidence, a charge on the law of circumstantial evidence must be given on request." See also *Barner v. State*, 263 Ga. 365, 366 (1) (434 SE2d 484) (1993). Likewise in *Manning*, supra, failure to give the charge, which was not requested, did not create reversible error. There was direct evidence in that case, i.e., the testimony of the victim describing the criminal act committed upon him. The charge is not one which is necessarily covered by OCGA § 5-5-24 (c) as a matter of law.

The principle contained in OCGA § 24-4-6 first appears in Georgia recorded case law, according to our research, in *Wasden v. State*, 18 Ga. 264 (1855), and this is included in Hopkins' Annotated Penal Laws of Georgia, 1875. Section 484 in Hopkins states: "The Court was requested to charge 'That the circumstances of the case should not only be consistent with guilt, but inconsistent with any other *rational conclusion.*' The Court charged as follows: 'I will not charge you in the words of the request; but do charge, as I have done, that it is not necessary to prove the fact by positive evidence, but the same may be proven by circumstances; that you must be satisfied, to a reasonable certainty, of the defendant's guilt from those circumstances.' The request to charge, was, in the opinion of this Court, a request to charge what was the law. But the Court, although refusing to give the re-

---

[2] *Burris* is somewhat in error, however, because the charge was not requested in that case but *Burris* says the court was "required" by *Robinson* (and did) give it.

quest in the words of the request, gave in other words, as we think, the substance of it. Benning, J. *Wasden*, 18 Ga. 264, 265."[3] (Emphasis supplied.)

*Wasden* involved an indictment for adultery and fornication, and a new trial was ordered because of error in a charge on the doctrine of reasonable doubt. It had strayed from the principle "that the guilt of the accused should be fully proved; neither a mere preponderance of evidence, nor any weight of preponderant evidence, is sufficient for the purpose, unless it generate full belief of the fact, to the exclusion of all reasonable doubt." Id. at 266. This was taken from I Starkie, Ev. 478 and was adopted in *Giles v. State*, 6 Ga. 276, 285 (6, 7) (1849). The court pointed out that Starkie's language has other sanctions, such as in 3 Greenleaf's Ev., § 29 and notes.

There is a similarity between the concept that guilt must be proved *beyond* a reasonable doubt, that is, to the exclusion of all reasonable doubt, and the concept that the circumstances must not only be consistent with guilt, but inconsistent with any other rational conclusion. Both concepts state the affirmative and then, to give the whole picture, the negative.

As the jury comprehends the evidence, it can adopt the conclusion of guilt only if no reasonable doubt remains. It must consider all doubts, and if it can reject them, and no reasonable one remains, then the conclusion of guilt can be accepted. In comprehending all "the circumstances of the case" (in the words of the request in *Wasden*, supra), it must consider all hypotheses ("conclusions") other than guilt, and if the circumstances are inconsistent with any contrary reasonable ("rational") hypothesis, then the hypothesis of guilt can be accepted. Circumstantial evidence must satisfy the jury beyond a reasonable doubt, "to a reasonable certainty," to the exclusion of any rational conclusion other than guilt.

In *Giles*, supra, in discussing the degree of proof necessary to convict, and the degree of certainty which must be reached in the minds of the jurors, the court concluded that "[i]t is enough that the evidence, whatever be its character, whether positive or presumptive, direct or circumstantial, satisfies the understanding and conscience of the Jury." Id. at 286. The point is, even where the evidence is direct, the body of evidence must exclude all rational conclusions which are inconsistent with guilt, so that the result remaining leaves no reasonable doubt.

According to the Supreme Court, the requirement that what is now OCGA § 24-4-6 be given in charge, even without request, "ap-

---

[3] *Wasden* preceded the three cases recently referred to as the "first." See, e.g., *McGuire*, supra; *Johnson*, supra.

pears to have been imposed first in *Hamilton v. State*, 96 Ga. 301 (22 SE 528) (1895). Compare *Barrow v. State*, 80 Ga. 191 (3) (5 SE 64) (1887)." *Germany v. State*, 235 Ga. 836, 842 (2) (221 SE2d 817) (1976). In *Germany*, the court refers to the reasonable hypothesis as "a plausible explanation," id., and finds crucial the fact that defendant offered no other reasonable hypothesis but basically argued that the State did not carry its burden of proof. Id. at 844. *Playmate Cinema v. State*, 154 Ga. App. 871, 872 (2) (269 SE2d 883) (1980), applies *Germany*, noting that "the evidence fails to suggest any reasonable hypothesis save that of guilt." Id. at 873. This case also chronicles some of the history of the charge subsequent to *Hamilton*. In *Bogan v. State*, 158 Ga. App. 1, 2 (279 SE2d 229) (1981), the court, in reviewing the sufficiency of the evidence, wrote that " '[i]n making a determination of whether any other reasonable hypothesis exists, the defendant's explanation must be taken into consideration insofar as it is consistent with the circumstantial evidence properly admitted.' " Likewise in *Johnson v. State*, supra (non-precedential), the court noted that "no reasonable hypothesis of innocence or of a different intent has been suggested." *Middleton v. State*, 7 Ga. App. 1, 3 (66 SE 22) (1909), refers to the charge as being appropriate when there is "a question of a comparison of the reasonableness of hypotheses."

In this case, neither defendant offered any explanatory evidence so as to raise a hypothesis of innocence. They merely relied on the presumption of innocence, the State's heavy burden of proof as to every element, and the principle, given in charge at their request, that mere presence of a person at the scene of the crime, without more, does not authorize a finding of guilt. This principle is an attack on the significance of the State's proof, not a contrary theory or hypothesis. It is not an affirmative defense but rather " 'a corollary to the requirement that the state prove each element of the offense charged.' " *Jones v. State*, 205 Ga. App. 711, 713 (4) (423 SE2d 393) (1992). Compare, for example, *Cato v. State*, 212 Ga. App. 417 (441 SE2d 900) (1994), where a plausible explanation was offered to counter the State's theory of the case. There is no evidence that Alcibiades did not know of his involvement with the cocaine or did not have the requisite criminal intent; he relied instead on the State's burden to show that he *had* such knowledge and intent.

As we concluded in Case No. A93A0795, there was uncontroverted direct evidence against Humberto which overwhelmingly established his participation in the drug trade scheme. The evidence against Alcibiades as a party to the crimes of trafficking in cocaine and possession of cocaine with intent to distribute was in part circumstantial, but there was direct evidence that he drove the car which brought the cocaine after it was summoned, moved the car because it was impeding the transaction, went into the station when the cocaine

package was taken in, and was present at the scene of the swap. What was proved by circumstantial evidence was his knowledge that he was transporting the cocaine for a transaction and his intent to do so. Included as circumstantial evidence was that the car was his brother Humberto's and the cocaine was summoned from Humberto's house, where it had to be prepared, and that Alcibiades was driving it when the car was called to assure that it was en route and to determine how long it would take to arrive.

The charge is not such that the failure to give it deprived defendants, in this case Alcibiades, of a fair trial. The jury was fully instructed that it had to find guilt beyond a reasonable doubt. It was carefully instructed that "[t]he mere presence of a person at the scene of the commission of the crime at the time of its perpetration, without more, will not authorize a jury to find a person who is merely present guilty of consent in, and concurrence in, the commission of the crime, unless the evidence shows beyond a reasonable doubt that such person committed the alleged crime, helped in the actual perpetration of the crime, or participated in the criminal endeavor." This clearly applied to Alcibiades.

In *Moughon v. State*, 57 Ga. 102 (1876), defendant enumerated as error the court's charge on circumstantial evidence and the failure of the court to define circumstantial evidence except by reading "section 3747, et seq., of the Code." Id. at 104. (Section 3737 relates to the object of evidence. Section 3738 gave sundry definitions including those for direct and circumstantial evidence as recited in section 983 and section 984 of the 1895 Code,[4] and section 985 regarding positive and negative testimony.)

Justice Bleckley cautioned that "[i]n trying a case depending upon circumstantial evidence, very few abstract principles should be given to the jury. Left to exercise their common-sense in their own way, the jury will generally determine correctly what is well proved, and what lacks further support. Furnished with a superfluity of rules, their attention is distracted, and the proffered help only obstructs. The better practice is, to decline charging refined speculations, and give only course, sharp-cut law. What shall come to the jury as evi-

---

[4] Code of Georgia of 1895, § 983 of Volume 3 sets out the definitions of direct and indirect, or circumstantial, evidence: "*Direct* evidence is that which immediately points to the question at issue. *Indirect*, or *[c]ircumstantial* evidence is that which only tends to establish the issue by proof of various facts, sustaining, by their consistency, the hypothesis claimed."

Section 984 sets out when circumstantial evidence is sufficient: "To warrant a conviction on circumstantial evidence, the proven facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused." That is a principle of law, not a jury charge as such. A number of cases are included in the annotations to this section, the earliest of which is *Newman v. State*, 26 Ga. 633 (1859).

dence, is for the court. What it is worth when it arrives, is for the jury. They can discern its true value with spare assistance from the bench. The judge may well assume that they have a fair aptitude for their share of the common business." Id. at 106-107.

Thus the concept, which emanates from a commitment to a high level of certainty of criminal act before the State takes away a person's life or liberty, arose as a means for the appellate courts to measure the sufficiency of the evidence when all of the evidence that this person committed the crime charged is circumstantial and a rational explanation *contrary* to guilt appears from the evidence or lack of it, or from the defendant's explanation. When there *are* conflicting explanations, those which are consistent with innocence must not be rational, in order to be discarded in favor of the explanation which is consistent with guilt.

Requiring the abstract charge *in the language of OCGA § 24-4-6* ignores the substantial degree of incomprehensibility to the average juror, for it is not couched in ordinary, lay terms. Using the word "hypotheses" is somewhat misleading, as the jury may not "assume" guilt for the sake of argument; doing so poses an end result at the outset and directs thinking towards that end. It detracts from the presumption of innocence. According to Webster's Third New Intl. Dictionary, a hypothesis is: "[A] proposition tentatively assumed in order to draw out its logical or empirical consequences and so test its accord with facts that are known or may be determined[;] . . . an assumption or concession made for the sake of argument[;] . . . the antecedent clause in a conditional statement. . . ." It is doubtful that the average juror understands this charge.

We cannot say, particularly in the context of the entire charge in this case and the absence of any evidence evincing a plausible explanation or reasonable hypothesis of innocence, that the omission of a charge reciting the principle in OCGA § 24-4-6 was "a substantial error which was harmful as a matter of law" so as to come within OCGA § 5-5-24 (c). Consequently, there is no reversible error in this regard.

*Judgment affirmed. Birdsong, P. J., Andrews, Johnson, Smith, JJ., and Senior Appellate Judge Harold R. Banke concur. Pope, C. J., McMurray, P. J., and Blackburn, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent as I am of the opinion that the evidence against Alcibiades Roura was not sufficient to support his conviction.

The evidence against Alcibiades Roura was sparse, at best: He drove up to the gas station; a passenger exited the car he was driving and carried a package inside the station; he was asked to move a car so the undercover officer could park next to the station. Although

these facts give rise to a suspicion that Alcibiades Roura was involved in the deal, they are consistent with the conduct of an innocent person who may have been "duped" into becoming an unwitting accomplice. Thus, it cannot be said that the evidence against Alcibiades Roura is sufficient to enable a rational trier of fact to find him guilty of trafficking in cocaine and possession of cocaine with intent to distribute beyond a reasonable doubt. *Haxho v. State,* 186 Ga. App. 393, 394 (367 SE2d 282).

I am authorized to state that Chief Judge Pope and Judge Blackburn join in this dissent.

DECIDED JUNE 23, 1994 —
RECONSIDERATION DENIED JULY 15, 1994 

*John H. Tarpley, Antje R. Kingma, Melissa M. Nelson, Abbi S. Taylor,* for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Nancy B. Allstrom, Stacy Y. Cole, Assistant District Attorneys,* for appellee.